# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**CAROLYN J. NICHOLS**
Noblesville, Indiana

ATTORNEYS FOR APPELLEE:

**MICHAEL C. PRICE**
DCS, Hamilton County
Indianapolis, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

FILED
May 24 2013, 9:15 am
CLERK
of the supreme court,
court of appeals and
tax court

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF | ) | |
| THE PARENT-CHILD RELATIONSHIP OF | ) | |
| J.C., Et. C., & El. C., Minor Children, | ) | |
| | ) | |
| S.C., Mother, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1210-JT-833 |
| | ) | |
| INDIANA DEPARTMENT OF CHILD | ) | |
| SERVICES, | ) | |
| | ) | |
| Appellee-Petitioner, | ) | |

APPEAL FROM THE HAMILTON CIRCUIT COURT
The Honorable Paul A. Felix, Judge
The Honorable Todd L. Ruetz, Master Commissioner
Cause Nos. 29C01-1202-JT-265, 29C01-1202-JT-266, 29C01-1202-JT-267

**May 24, 2013**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

S.C. (Mother) appeals the involuntary termination of her parental rights to J.C., Et.C., and El.C., and presents three issues:

1.	Whether the Department of Child Services (DCS) presented sufficient evidence there was a reasonable probability that the conditions that resulted in the children's removal would not be remedied;

2.	Whether DCS presented sufficient evidence involuntary termination of Mother's parental rights was in the children's best interests; and

3.	Whether DCS presented sufficient evidence there existed a satisfactory plan for the care and treatment of the children.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Mother and V.C. (Father) are the parents of Et.C., born July 26, 2006; J.C., born December 21, 2008; and El.C., born February 23, 2011. On March 18, 2010, DCS detained Et.C. and J.C. after Mother was arrested for theft and operating a vehicle while intoxicated. Father could not be located at the time of Mother's arrest. On March 22, the juvenile court held a hearing to determine if Et.C. and J.C. were Children in Need of Services (CHINS) and should be removed from the family home. The court determined Et.C. and J.C. were CHINS, but did not order removal, as Father was able to care for them.

On July 26, the court ordered Mother and Father to participate in a variety of services; to maintain contact with DCS and the Guardian ad Litem (GAL); to keep all appointments with service providers; to allow announced and unannounced visits by DCS or the GAL; to

2

maintain suitable housing and sources of support and income sufficient for the safe upbringing of Et.C. and J.C.; to participate in home-based therapy, counseling, and case management; to participate in and successfully complete a parenting assessment; and to abstain from the use of drugs and alcohol. That order left Et.C. and J.C. in Mother's care, as Father was incarcerated.

On September 13, 2010, the court removed Et.C. and J.C. from Mother's care because Mother had been arrested for neglect of a dependent and public intoxication after she fell asleep at a restaurant due to intoxication and then attempted to walk herself and the children across a busy highway. Et.C. and J.C. were placed in foster care.

On December 22, the court held a review hearing. It noted Mother was compliant with many requirements of the CHINS case plan, including that her drug screens had been negative and she had completed an Intensive Outpatient Program for substance abuse. Et.C. and J.C. could not be placed with Mother, however, because she was serving a sentence in a work-release facility.

On February 23, 2011, while still at the work release facility, Mother gave birth to El.C. DCS immediately filed a CHINS Petition because both parents were incarcerated. The court adjudicated El.C. a CHINS and ordered Mother to complete the services consistent with the other CHINS adjudication.

By May 2011, Mother had successfully completed all services required by the CHINS case management plan. The court ordered preparation for a trial home placement of the children with Mother to begin on July 1. In September 2011, things were going so well that

Mother, Mother's fiancé, and DCS service providers met to discuss full reunification and possible closing of the CHINS cases in the near future.

On October 7, 2011, the children were removed from Mother's care for a final time after Mother battered her fiancé in the presence of the children because he would not give Mother more than the prescribed amount of her prescription medication. The children initially were placed in foster care, then were transferred to the care of paternal grandmother, where they have remained. On December 15, the juvenile court held a CHINS compliance hearing, changed the permanency plan from reunification to termination of parental rights, and suspended all of Mother's services because of her arrest.

On February 29, 2012, DCS filed petitions to involuntarily terminate Mother's parental rights. After hearing evidence, the trial court terminated Mother's parental rights.[1]

## DISCUSSION AND DECISION

We review termination of parental rights with great deference. *In re K.S., D.S., and B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

---

[1] That same day, the court also terminated Father's parental rights. He is not part of this appeal.

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id*. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A juvenile court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id*. at 836.

To terminate a parent-child relationship in Indiana, the State must allege and prove:

(A)    that one (1) of the following is true:
  (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.
  (ii)   A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

5

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

In involuntarily terminating Mother's parental rights to the children,[2] the juvenile court found:

3.) On 3/18/10, DCS investigated a report of abuse and/or neglect regarding [Et.C.] and his sister brother [sic] [J.C.]. [Mother] was arrested for the crime of theft and operating a motor vehicle while intoxicated. [Mother] had [Et.C.] and [J.C.] with her at the time she was under the influence of intoxicating substances, and while committing the acts for which she was arrested.

\* \* \* \* \*

9.) On 9/13/10, a second removal of [Et.C.] and [J.C.] from the home of the

---

[2] We quote from the court's findings regarding Et.C. only, as the findings for all three children are virtually identical.

6

biological parents had occurred. The CHINS court conducted a detention hearing on that date, making the following findings and orders, which this Court now adopts as its own findings in this termination cause:

- Detention was necessary to protect [Et.C], and in the child's best interests to remain removed from the home of biological parents;
- The biological parents were both incarcerated at this time;
- [Mother] was unable to remain awake while in a public restaurant, due to use and abuse of intoxicating substances, had crossed a busy thoroughfare on foot with [Et.C.] and [J.C.] while in this state of impairment, and [Mother] was arrested for these acts, facing multiple counts of Neglect of a Dependent and public intoxication[.]

10.)    As of 12/22/10, [Mother] had complied with the CHINS court's dispositional orders. [Mother] had participated in home-based therapy, had completed an Intensive Outpatient Program ("IOP") to address her drug abuse, and had submitted multiple negative drug screens. However [Mother] had multiple pending criminal charges relating to drug use for which she was subject to possible executed time which would necessarily interrupt reunification services. . . .

11.)    On 2/23/11, [Mother] gave birth to another sibling of [Et.C.], named [El.C.]. On 2/25/11, DCS filed a new CHINS case as it related to this new child, under cause number 29C01-1102-JC-246. By this date, [Mother] had been sentenced in the drug related criminal cases described in paragraph 10.) above, and was serving her sentence on a work-release program, which had also interrupted her reunification efforts. The biological parents admitted to the allegations of this new CHINS petition on 2/28/11.

12.)    As of 6/20/11, [Mother] had resumed her compliance with reunification efforts, participating in home-based therapy, post-IOP substance abuse counseling, visitation sessions, and maintenance of negative drug screens. . . . [Mother]'s executed sentence was completed and the CHINS court authorized DCS to attempt a Trial Home Visit of [Children] in the home of [Mother] in early July of 2011. The CHINS case was set for a Permanency Hearing on 12/5/11.

13.)    On 10/13/11, a third detention and removal of [Children] occurred. [Mother] had again been arrested and incarcerated due to resumed drug-related conduct and criminal behavior. The CHINS court conducted a detention hearing on that date, making the following findings and orders, which this Court now adopts as its own findings in this termination cause:

- [Mother] had engaged in an episode of domestic violence in the family home, and in front of [Children];
- The violent episode included physical assault on [Mother's] fiancé, and interfering with his attempt to dial for emergency assistance;

7

- This violent episode was specifically due to mother's fiancé refusing to provide [Mother] with a controlled substance, which the fiancé had been delegated to dispense to [Mother] in appropriate amounts. [Mother] was violently demanding excess amounts of the controlled substance;
- [Mother] was arrested and incarcerated, and was already serving a sentence in unrelated, but drug-related, criminal charges;

* * * * *

14.) On 12/15/11, the CHINS court found the following facts in determining that [Mother] and father were not in compliance with the child's case plan, or complying with the court's dispositional orders, which this Court now also finds as facts in this termination proceeding:

- [Mother] had completed home-based therapy, individual counseling, and substance abuse treatment, and had participated in a Trial Home Visit as of 7/1/11;
- The CHINS case was close to successful reunification and dismissal until the incident described in paragraph 13.) above, which event occurred on 10/7/11;
- On 10/7/11 [Mother] engaged in an episode of domestic violence and substance abuse in the presence of all of her children;
- [Mother] consumed alcohol and got into an argument with her boyfriend because he refused to supply her with excess amounts of her prescription medications, leading to an assault by [Mother] on the boyfriend. The assault caused physical injury to the boyfriend, and damage and destruction to the inside of the family home;
- [Mother] was arrested and incarcerated for this event;
- Despite the near-completion of reunification services and a Trial Home Visit, [Mother] had again resumed substance abuse and criminal conduct that has led to her extended incarceration, and deprived her children of her presence and parenting

* * * * *

16.) As of 5/21/12, [Mother] had been convicted of crimes arising from the incident of 10/7/11, which was due to [Mother's] resumption of substance abuse by [Mother] [sic]. [Mother] received an executed sentence to the Indiana Department of Corrections [sic] with an earliest possible release date in January of 2013. [Mother] remains incarcerated as of the date of the Fact Finding Hearing on this termination petition. [Mother] also has pending violations of probation on other drug-related criminal convictions as of the date of the termination trial, and may receive additional executed time.

* * * * *

18.) The Court finds the following facts from [Mother's] testimony at the

8

termination trial on 6/25/12:

- [Mother] has been unavailable to fulfill her parental obligations due to incarceration from various drug-related incidents in March of 2010 for approximately two weeks; in June of 2010 for approximately two days; in September of 2010 for approximately four days; from February 9, 2011 to May 31, 2011, during which she was serving an executed sentence on work-release; and since approximately May of 2012, based on her arrest for the incident on 10/7/11;

- [Mother] has the status of a "chemically addicted offender" as established through her record of criminal arrests and convictions;

- [Mother], by her own admission, will struggle with addiction forever;

- [Mother] intends to live with and marry [J.G.]. This is the same individual who was the victim of [Mother's] physical assault on 10/7/11;

- [Mother's] past substance abuse history also includes a conviction for operating a motor vehicle while intoxicated, for which she was sentenced to the Indiana Department of Corrections [sic] for approximately six (6) months in 2004 to 2005.

* * * * *

20.) [Mother] has been offered and provided with multiple reunification programs and services throughout the CHINS case, often working around periods of incarceration. These services have included home-based therapy, individual counseling, and substance abuse treatment, including after-care programs.

21.) None of these services, even after apparent successful completion, have had any lasting effect or prevented the next round of substance abuse, arrest, and incarceration. [Mother] was incarcerated between February and May of 2011. During this time, she gave birth to the youngest sibling of [Et.C.], [El.C.]. Following the end of this incarceration, [Mother] worked up to a Trial Home Visit between July and October of 2011. A Child and Family Team Meeting ("CFTM") took place in late September or early October of 2011, between members of DCS and [Mother], where the parties were preparing for the imminent dismissal of the CHINS case due to [Mother's] apparently successful efforts to reunify. However, within days of this meeting, [Mother] returned to substance abuse and criminal conduct on 10/7/11, and now is serving an extended criminal sentence as a result.

22.) [Mother's] pattern of reunification efforts, inevitably followed by a return to substance abuse and criminal activity, similarly leading to incarceration and enforced separation from her biological children, is damaging to the best interests and lives of these children. This pattern demonstrates that no level of services or standard of performance met by

9

[Mother], will free the child[ren] from the likelihood that the pattern will repeat. No level of services has prevented [Mother] from continuing this pattern and jeopardizing the future prospects of the child[ren]. The most recent episode of substance abuse and criminal activity led to a violent and dangerous outburst, causing property damage and physical injury to a grown adult, all while the [children] were present to observe. This subjected them to the possibility of physical harm, and the certainty of emotional trauma.

23.) [Mother] acknowledges that she will always struggle with addiction, is recognized by the statutory structure of this State that she is a chemically addicted offender, and intends to live with and marry the same individual who[m] she physically attacked to secure excess controlled substances.

24.) [Mother's] series of criminal acts, arrest and incarceration, participation in reunification services, and subsequent relapses, demonstrates that the conditions that resulted in the child's removal or the reasons for placement outside the home will not be remedied. They also demonstrate that continuation of the parent-child relationship poses a threat to the child's well-being.

(App. at 19-25.)

1.    Conditions Resulting in Removal

In deciding whether the conditions that resulted in a child's removal will not be remedied, a juvenile court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. It must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id*. Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *A.F. v. Marion Cnty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied*.

10

The juvenile court also may consider, as evidence whether conditions will be remedied, the services offered to the parent by DCS and the parent's response to those services. *Id.* A juvenile court need not wait until a child is irreversibly harmed by a deficient lifestyle such that his or her physical, mental, and social growth are permanently impaired before terminating the parent-child relationship. *In re E.S.*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002).

Mother argues DCS did not present sufficient evidence to support the juvenile court's findings that there was a reasonable possibility that the conditions that resulted in the children's removal from her care would not be remedied, because DCS provided inadequate services to her during the CHINS proceedings. We are unable, however, to address the adequacy of the services offered to her during the CHINS proceeding because that issue is unavailable during an appeal following termination of parental rights. *See In re H.L.*, 915 N.E.2d 145, 148 n.3 (Ind. Ct. App. 2009) ("failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law").

Mother also argues DCS did not present sufficient evidence to support four of its findings: 12, 21, 22, and 24. There was sufficient evidence to support these findings.

Finding 12 states:

> 12.) As of 6/20/11, [Mother] had resumed her compliance with reunification efforts, participating in home-based therapy, post-IOP substance abuse counseling, visitation sessions, and maintenance of negative drug screens. … [Mother]'s executed sentence was completed and the CHINS court authorized DCS to attempt a Trial Home Visit of [Children] in the home of [Mother] in early July of 2011. The CHINS case was set for a Permanency Hearing on 12/5/11.

11

(App. at 21.)  Mother argues Finding 12 is not accurate because:

> As of June 2, 2011, Mother was in compliance with the Department's reunification efforts, but she was also in relapse.  She had already been using a prescribed opioid compound and she was no longer able to access drug treatment at Aspire.  She was also having allergic reactions to her medications and was visiting a number of different doctors and hospitals.  Her therapist had already noticed a great increase in the number of medication [sic] Mother was taking.  By June 7, 2011 Mother was back on prescribed benzodiazepines and thinking outloud that she could handle this medication.  (App. p. 149.)  It is doubtful that Mother will ever be able to handle that medication, and everyone involved should have known that.

(Br. of Appellant at 43) (citation to the record in original).  DCS presented evidence Mother had been successfully participating in services as of June 2011, and her children were returned to her home for a trial home placement in July 2011.  They remained there until October 7, 2011.  Mother's argument is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do.  *See In re D.D.*, 804 N.E.2d at 265 (appellate court does not reweigh evidence or judge credibility of witnesses).

> Finding 21 states:

> 21.)    None of these services, even after apparent successful completion, have had any lasting effect or prevented the next round of substance abuse, arrest, and incarceration.  [Mother] was incarcerated between February and May of 2011.  During this time, she gave birth to the youngest sibling of [Et.C.], [El.C.].  Following the end of this incarceration, [Mother] worked up to a Trial Home Visit between July and October of 2011.  A Child and Family Team Meeting ("CFTM") took place in late September or early October of 2011, between members of DCS and [Mother], where the parties were preparing for the imminent dismissal of the CHINS case due to [Mother's] apparently successful efforts to reunify.  However, within days of this meeting, [Mother] returned to substance abuse and criminal conduct on 10/7/11, and now is serving an extended criminal sentence as a result.

(App. at 24.)  Mother argues the trial court's statement that she "returned to substance abuse

and criminal conduct on 10/7/11" was erroneous because "[i]n reality, as noted above, Mother returned to substance abuse several months before that, the Department just chose not to intervene until she was once again in criminal jeopardy." (Br. of Appellant at 43.)

Similarly, Mother takes issue with the trial court's statement in Finding 22: "No level of services has prevented the biological mother from continuing this pattern and jeopardizing the future prospects of the child." (App. at 24.) In her brief, Mother argues the finding was

> a gross exaggeration of the truth. The Department provided absolutely no drug treatment for Mother. The Department left this up to Aspire of Indiana and Mother's Medicaid coverage. Mother's Medicaid coverage lapsed in May, but the Department did not assist in paying for further treatment at Aspire until the end of July of 2011, when it was too late to help. (App. p. 128). Mother never did have an appropriate level of treatment, because after the initially successful I.O.P. program, she did not obtain appropriate and highly necessary planning services to avoid relapse as a result of the delivery of her third child and the administration and prescription of pain relieving medications in February of 2011. (Statement of Facts, App. Br. pp. 8, 9, 14, 15).

(Br. of Appellant at 43) (citations in original). DCS presented evidence to support Findings 21 and 22. Prior to the termination petition, Children had been adjudicated as CHINS at least once, and all had been removed from Mother's care more than once because of her drug use and criminal activity. Mother's arguments to the contrary are an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court does not reweigh evidence or judge credibility of witnesses).

Finding 24 states:

> 24.) [Mother's] series of criminal acts, arrest and incarceration, participation in reunification services, and subsequent relapses, demonstrates that the conditions that resulted in the child's removal or the reasons for placement outside the home will not be remedied. They also demonstrate that continuation of the parent-child relationship poses a threat to the child's well-

13

being.

(App. at 24.)  Mother argues:

> Finding # 24 is actually a 'Conclusion'.  Based upon the facts of this case, we will never be able to make an accurate determination that the problematic conditions could not be remedied.  Mother's contention is that she never had a chance.  She complied with all requests.  She spent countless days talking to the Department's case manager and service providers.  Not one of these social workers had a degree in addiction medicine.  None of the service providers were certified addiction counselors.  The home-based therapist, [sic] eventually began to realize that Mother might be in trouble with her benzodiazepines, but no one paid any attention to her late and moderate warnings.  (App. Br. pp. 22-29).

(Br. of Appellant at 44) (citation in original).  While Finding 24 has conclusory language, it is a finding summarizing the other more specific findings which, as noted above, are all supported by the evidence.  Mother's arguments regarding the level of services received or observations her providers were obliged to make are invitations for us to reweigh the evidence, which we cannot do.  *See In re D.D.*, 804 N.E.2d at 265 (appellate court does not reweigh evidence or judge credibility of witnesses).[3]

>    2.    Children's Best Interests

Pursuant to Ind. Code § 31-35-2-4(b)(1)(C), DCS must provide sufficient evidence "that termination is in the best interests of the child."  In determining what is in the best interests of a child, the trial court is required to look beyond the factors identified by the DCS

---

[3] Mother also argues there was insufficient evidence the continuation of the parent-child relationship posed a threat to the well-being of the children pursuant to Ind. Code § 31-35-2-4(b)(1)(B)(ii).  However, Ind. Code § 31-35-2-4(b)(1)(B) is written in the disjunctive, such that the trial court need find only one of the three elements to be true, and DCS presented sufficient evidence  there was a reasonable possibility the conditions under which the children were removed would not be remedied.  We therefore need not address that argument.

14

and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). In so doing, the trial court must subordinate the interests of the parent to those of the child. *Id*. The court need not wait until a child is harmed irreversibly before terminating the parent-child relationship. *Id*. Recommendations of the case manager and court-appointed advocate, in addition to evidence the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id*.

A parent's historical inability to provide a suitable environment, along with the parent's current inability to do the same, supports finding termination of parental rights is in the best interests of the children. *Lang v. Starke County Office of Family and Children*, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007), *trans. denied*. Mother argues she never harmed her children, and the "DCS providers repeatedly commented on Mother's tender care for her children, her neat and organized home, and her willingness to comply with the requests of the court and the Department of Child Services." (Br. of Appellant at 45.)

As noted above, the trial court made findings regarding Mother's drug use and criminal activity that resulted in the children's removal more than once. Mother was incarcerated at the time of the termination hearing, with a release date in early 2013. She faced revocation of her probation for an earlier charge based on criminal activity. Mother's arguments are invitations for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court does not reweigh evidence or judge credibility of witnesses).

15

3.    Satisfactory Plan for Care and Treatment of Children

Mother argues DCS' plan for the care and treatment of the children following termination is not satisfactory because the children are currently in pre-adoptive placement with paternal grandmother, who has taken the children to prison to visit Father on numerous occasions, but she did not allow similar visitation to Mother while she was incarcerated. Mother is concerned that paternal grandmother, if permitted to adopt, might alienate the children from Mother while allowing a relationship with Father, even though both parents' rights were involuntarily terminated for drug use and criminal activity.

Pursuant to Ind. Code § 31-35-2-4(b)(1)(D), DCS must provide sufficient evidence there is a satisfactory plan for the care and treatment of the child.  We have held "[t]his plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re L.B.*, 889 N.E.2d 326, 341 (Ind. Ct. App. 2008).  The juvenile court found there was a satisfactory plan; the children were all in pre-adoptive placement with their paternal grandmother, who had cared for them for almost a year when the termination proceedings ended.

Our standard of review and the controlling law compel us to hold the evidence supported finding of an adequate plan for the children's future care, as a necessary element for termination of Mother's parental rights, *see id.*, we note that such finding is not tantamount to affirmation that adoption of these children by their paternal grandmother would be in their best interests.  *See* Ind. Code § 31-19-11-1(a) (list of elements required for adoption of minor child, including finding adoption is in the best interest of the child).  We

16

find no error with the juvenile court's decision.

## CONCLUSION

DCS presented sufficient evidence the conditions that resulted in the children's removal were not likely to be remedied, and the findings support the court's conclusion termination was in the best interests of the children. There was a suitable plan in place for the care and treatment of the children. Accordingly, we affirm the termination of Mother's parental rights.

Affirmed.

BAKER, J., and MATHIAS, J., concur.