**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 20 2014, 9:34 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DERICK W. STEELE**
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINA D. PACE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF, | ) ) ) |
| A.C., Minor Child, | ) ) |
| and, | ) ) |
| A.C., Father, | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) No. 34A05-1402-JT-89 ) |
| The Indiana Department of Child Services, | ) ) |
| Appellee-Petitioner. | ) |

APPEAL FROM THE HOWARD CIRCUIT COURT
The Honorable Lynn Murray, Judge
Cause No. 34C01-1308-JT-242

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

A.C. ("Father") appeals the termination of his parental rights to his son, A.C. We affirm.

## Issue

The sole restated issue before us is whether there is sufficient evidence to support the termination of A.C.'s parental rights.

## Facts

A.C., who was born in 2008, is the child of Father and T.T. ("Mother"). On March 23, 2012, the Kokomo Police Department was called to the home of Father, Mother, and A.C. for a report that Father had attempted to strangle Mother, had broken furniture, and had punched a hole in the wall. Father was arrested and removed from the home. Mother was severely intoxicated, as were several other adults in the home. The home had no refrigerator and very little food, there was rotten food on A.C.'s bed, and he was very dirty. A.C. reported that he had seen Father strangle Mother and that he often hid while Father and Mother fought.

The Department of Child Services ("DCS") immediately removed A.C. from the home and placed him in foster care. On May 7, 2012, Father and Mother stipulated that A.C. was a CHINS, based on Mother's alcohol use, Father's arrest, and the condition of

the home. At that time, Father remained jailed on pending charges of Class D felony strangulation and Class D felony neglect of a dependent. Father eventually pled guilty to the strangulation charge and completed the executed part of his sentence on August 1, 2012. Father also has a prior criminal history consisting of a 1992 conviction for child molesting, a 1993 conviction for sexual battery, a 2000 conviction for battery of his then-girlfriend's six-year-old child, and a 2004 conviction for failure to register as a sex offender. Father was required to undergo anger management counseling following his 2000 battery conviction.

After Father's release from jail in August 2012, he participated in regular supervised visitation with A.C. Although the visitations generally seemed to go smoothly, there were occasions when Father displayed frustration at A.C.'s behavior, which concerned observers. Visitation never progressed to unsupervised because of Father's criminal history. Father also participated in programs for batterers, anger management, and relapse prevention. Although Father's attendance at these programs was good, it was reported that he often appeared "disengaged and . . . not very interactive" at meetings and that it seemed he did not "really get a whole lot out of the class . . . ." Tr. p. 33. Father also regularly submitted to alcohol screening tests, all of which were negative.

As for Father's housing situation after being released from jail, he consistently lived with a friend beginning in November or December 2012. Father's friends paid most of the bills. Father was taking classes at Ivy Tech in HVAC and was planning to move to Lafayette in February 2014 to seek employment there.

3

DCS filed a petition to terminate Father and Mother's parental rights. The trial court held a hearing on the matter on December 16, 2013. It subsequently entered an order terminating both Father and Mother's parental rights. Father now appeals; Mother does not.

**Analysis**

"When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility." In re I.A., 934 N.E.2d 1127, 1132 (Ind. 2010). We consider only the evidence and reasonable inferences most favorable to the judgment. Id. "We must also give 'due regard' to the trial court's unique opportunity to judge the credibility of the witnesses." Id. (quoting Indiana Trial Rule 52(A)). Where a trial court enters findings of fact and conclusions thereon, as the trial court did here, we apply a two-tiered standard of review. Id. "First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment." Id. We will set aside the trial court's judgment only if it is clearly erroneous, which occurs if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. Id.

A petition to terminate a parent-child relationship must allege:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

4

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS has the burden of proving these allegations by clear and convincing evidence. I.A., 934 N.E.2d at 1133. We also keep in mind "that parental rights, while constitutionally protected, are not absolute and must be subordinated to the best interests of the child when evaluating the circumstances surrounding termination." McBride v. Monroe County Office of Family & Children, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).

Father's brief is not entirely clear as to which of the statutory factors he claims the DCS failed to prove. He states at the beginning that he is challenging the trial court's

5

finding that continuation of the parent-child relationship would pose a threat to A.C., but does not provide direct analysis of that issue and ends by saying there is a lack of evidence that termination is in A.C.'s best interests. Even if Father is challenging the trial court's finding regarding continuation of the parent-child relationship, it also found that the conditions leading to A.C.'s removal from and continued placement outside of Father's care would not be remedied. Because the termination statute is written in the disjunctive, the DCS was only required to prove one or the other, but not both. See Bester v. Lake County Office of Family & Children, 839 N.E.2d 143, 148 n.5 (Ind. 2005). Even if we were to conclude that there was insufficient evidence that continuation of the parent-child relationship posed a threat to A.C., the alternative finding that conditions would not be remedied would be sufficient to terminate Father's parental rights, and Father does not challenge that.

We will focus upon whether there is sufficient evidence that termination is in A.C.'s best interests. In assessing what is in the best interests of a child, courts should look beyond the factors identified by the DCS and consider the totality of the evidence. In re J.C., 994 N.E.2d 278, 290 (Ind. Ct. App. 2013). The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. Id. Courts also must consider a parent's fitness to care for a child at the time of the termination hearing, taking into consideration any evidence of changed conditions. Id. at 287. A parent's habitual patterns of conduct must be evaluated, including consideration of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. Id. "A parent's historical inability to provide a suitable

6

environment, along with the parent's current inability to do the same, supports finding termination of parental rights is in the best interests of the children." Id. at 290.

Here, Father argues that he demonstrated compliance with DCS-ordered services following his release from jail in August 2012, including regular visitation with A.C. He also contends that his housing situation is stable and that he is attempting to become financially independent, albeit that at the time of the termination hearing he was living with a friend who was supporting him financially and he was not yet financially independent. Father asserts that termination of his parental rights under such circumstances represents an improper "'class or cultural judgment'" of his lifestyle and economic circumstances that is insufficient to support a termination of his parental rights. See Bester, 839 N.E.2d at 151 (quoting Tipton v. Marion County Dep't of Pub. Welfare, 629 N.E.2d 1262, 1268 (Ind. Ct. App. 1994)). In Bester, our supreme court reversed the termination of the parental rights of a father who regularly lived with relatives and was not financially independent, where the father had complied with all DCS services and there was no evidence that the father's "living arrangements and his alleged lack of independence pose or have ever posed a threat to the well-being of the child." Id. The court also held that father's prior criminal history was insufficient to support termination of his parental rights, where those convictions were largely drug- and gang-related, and there was no evidence the father had engaged in any such activities for at least three years prior to the termination hearing. Id. at 152.

We believe this case is clearly distinguishable from Bester. First, we address Father's current dependence upon others for housing and financial stability. Unlike in Bester, there was clear and abundant evidence in this case that A.C.'s well-being was

7

threatened by Father's lack of financial independence. The condition of the home where A.C. was living with Father and Mother when he was removed was very poor, lacking in food, and A.C. himself was dirty. Thus, it is highly relevant in the present case that Father, as of the time of the termination hearing, still was unable to financially support himself, let alone a child.

Second, regarding Father's criminal history, it is much more severe than the history at issue in Bester. Rather than being part of Father's distant past, as was the case in Bester, Father's most recent criminal conviction was one of the reasons A.C. was removed from his care. A.C. unfortunately witnessed Father strangling Mother, and he further indicated that incident was part of a longer pattern of domestic violence he often witnessed. Furthermore, Father has two prior convictions for crimes against children: for child molestation in 1992, and for battering a six-year-old in 2000. He also has convictions for sexual battery and failing to register as a sex offender. Father was supposed to have completed an anger management class following his 2000 conviction. It apparently failed to prevent his strangulation of Mother in 2012. To the extent Father did attend anger management and other related classes following this most recent convictions, it is troubling that classroom observers did not believe Father seemed to be gaining much from the classes. It also is worrisome that Father displayed frustration with A.C. while under the watchful eye of visitation supervisors. To be sure, many parents occasionally become frustrated with their children, but Father's frustration is significant in light of his history and because he became frustrated even under controlled and observed circumstances. In sum, given Father's violent criminal history, including crimes against children and crimes

committed in A.C.'s presence, and his historical inability to provide adequate living arrangements for A.C. along with his current inability to do so, we cannot say the trial court erred in concluding that termination of Father's parental rights was in A.C.'s best interests.

## Conclusion

There is sufficient evidence to support the termination of Father's parental rights. We affirm.

Affirmed.

BRADFORD, J., and BROWN. J., concur.