Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



FILED

Sep 12 2014, 8:51 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Special Assistant to the State Public Defender
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINE REDELMAN**
Deputies Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION OF )
THE PARENT-CHILD RELATIONSHIP OF: )
L.M. AND Z.W. (MINOR CHILDREN) and )
A.M. (MOTHER), )
    Appellant-Respondent, )
                              )
           vs. )  No. 90A02-1312-JT-1067
                              )
THE INDIANA DEPARTMENT OF )
CHILD SERVICES, )
    Appellee-Petitioner. )

APPEAL FROM THE WELLS CIRCUIT COURT
The Honorable Kenton W. Kiracofe, Judge
Cause No. 90C01-1212-JT-8
Cause No. 90C01-1212-JT-9

**September 12, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

A.M. ("Mother") appeals the trial court's order terminating her parental rights to Z.W. and L.M. (collectively, "Children").

We affirm.

**Issues**

Mother presents two issues for our review, which we restate as a single issue: whether the Department of Child Service ("DCS") carried its burden of proving by clear and convincing evidence that mother's parental rights should be terminated.

**Facts and Procedural History**

Z.W. was born to Mother and I.W. on July 5, 2006. Mother and I.W.'s relationship ended when Z.W. was around one year old. At the time of these proceedings, I.W. was incarcerated outside of Indiana.

On March 28, 2010, L.M. was born to Mother and J.M. ("Father"). At birth, L.M. tested positive for cocaine and amphetamines. As a result, a Child in Need of Services ("CHINS") proceeding was filed in Delaware County involving Mother and Father. This case was resolved through an informal adjustment.

In the summer of 2011, Mother, Father, and Children were in a car driven by Father. Police pulled the car over, and Father was arrested for Operating While Intoxicated. An informal adjustment was put into place by DCS. Children remained in the home, and services were provided to the family.

On August 4, 2011, drug screens were administered, and Mother and Father tested

positive for methamphetamine. DCS removed Children from the home, and Children were found to be CHINS on August 26, 2011. During the ensuing months, Mother tested positive for methamphetamine on several occasions, including while she was pregnant with a third child. DCS ordered Mother to participate in substance abuse treatment and to obtain a psychological examination.

Mother's participation in court-ordered, DCS-provided services was sporadic. Mother tested positive for methamphetamine use on several occasions and appeared for only a few supervised visits. Twice, DCS had planned trial home visits with Children and Mother; Mother was not present at the home on one occasion, and she tested positive for methamphetamine before the second attempted home visit in August 2012.

Between August 2012 and May 2013, Mother had no contact with DCS caseworkers or with Children. Father violated the terms of his probation in the criminal case that gave rise to the proceedings at issue here, and he was incarcerated; shortly thereafter, on December 19, 2012, DCS filed its petition to terminate parental rights.

In April 2013, Mother left Indiana to obtain mental health treatment. She was diagnosed with bipolar disorder, and during her treatment stay in Florida was transferred for three days to a hospital after threatening to commit suicide. Mother ultimately completed a thirty-day treatment program, and returned to Indiana after her May 18, 2013 discharge from the program.

On June 3, 4, and 6, 2013, the trial court conducted a hearing on DCS's petition to terminate Mother's parental rights. On December 11, 2013, the court ordered Mother's

3

parental rights terminated as to Children.[1]

This appeal ensued.

**Discussion and Decision**

Mother appeals the termination of her parental rights. Our standard of review is highly deferential in such cases. In re K.S., 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. Id. We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. Id.

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Indiana Code section 31-35-2-4(b)(2) sets out the elements that DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A) That one (1) of the following is true:

(i)     The child has been removed from the parent for at least six (6)

---

[1] A third child, E.M., was born to Mother and Father in May 2012. A separate CHINS action was filed concerning E.M.; the associated proceedings are not a subject of this appeal.

4

months under a dispositional decree.

    (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

    (iii)    The child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) That one (1) of the following is true:

    (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

    (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

    (iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

If the court finds that the allegations in a petition described in Section 4 of this chapter are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a). A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. The trial court also must "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." Id. Courts have properly considered evidence of a parent's prior

criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. A.F. v. Marion Cnty. Office of Family & Children, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), trans. denied.

On appeal, Mother contends that DCS did not carry its burden of proving by clear and convincing evidence the requirements of subsection 31-35-2-4(b)(2)(B)(i), which requires that the court find there is a reasonable probability that the conditions necessitating a child's removal from the home will not be remedied. The statute "is written in the disjunctive" so that only one of the requirements of subsection (B)—which include either that there is a reasonable probability the conditions necessitating a child's removal will not be remedied or that continuation of the parent-child relationship poses a threat to the child's well-being— need be proven by clear and convincing evidence. In re L.S., 717 N.E.2d at 209.

Throughout the duration of the CHINS proceeding, Mother failed to participate in most services provided, and tested positive for methamphetamine use on several occasions. Mother failed to participate in DCS-provided mental health services. Though she eventually obtained mental health services, several witnesses testified that Mother does not appreciate the significant role of substance abuse in her life. Mother's counselor during her inpatient treatment program, Mark St. John, characterized Mother's prognosis as "poor" as a result of this lack of insight and Mother's failure to engage community-level substance abuse counseling. (Tr. at 133.) The Children's Guardian Ad Litem and a DCS caseworker both testified that unless Mother is reliably sober, she is not capable of being a good parent. Mother also has a prior history of disputes with Father and other family members that have

6

escalated to violence.

While Mother states that she was receiving care for her bipolar condition and participating in substance abuse counseling at the time of the termination hearing, we note that she had been released from inpatient treatment only a few weeks before the hearing and failed to participate for almost ten months in any services related to reunification with the Children. We cannot conclude that DCS failed to carry its burden as to the likelihood that conditions in the home causing the Children's removal would be remedied.

Mother also contends that DCS failed to carry the burden of proving that terminating her rights as to Children was in their best interests. In determining the best interests of the child, a trial court must "look beyond the factors identified by the DCS and consider the totality of the evidence." In re J.C., 994 N.E.2d 278, 290 (Ind. Ct. App. 2013). The interests of the parent must be subordinated to those of the child. Id. A court need not wait until a child is harmed irreversibly before terminating the parent-child relationship. Id. "Recommendations of the case manager and court-appointed advocate, in addition to evidence the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests." Id.

Here, we have concluded there is sufficient evidence that the conditions that resulted in Children's removal will not likely be remedied. Both the DCS caseworker and Children's Guardian Ad Litem testified that termination of Mother's parental rights was in Children's best interests in light of Mother's established pattern of substance abuse. We accordingly conclude that DCS carried its burden to prove that termination of Mother's parental rights

7

was in Children's best interests.

## Conclusion

DCS carried its burden to establish by clear and convincing evidence that there was a reasonable likelihood that the conditions resulting in Children's removal from the home would not be remedied, and that termination of Mother's parental rights was in Children's best interests.

Affirmed.

NAJAM, J., and PYLE, J., concur.