# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 04 2015, 8:52 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kara Hancuff
Deputy Public Defender
Bloomington, Indiana

ATTORNEY FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Miller
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of: H.A., B.A., and J.A. (Minor Children)
and
H.A. (Mother)

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

March 4, 2015

Court of Appeals Case No. 53A01-1408-JT-338

Appeal from the Monroe Circuit Court
The Honorable Stephen R. Galvin, Judge
Cause Nos. 53C07-1403-JT-110
53C07-1403-JT-111
53C07-1403-JT-112

**Bailey, Judge.**

# Case Summary

H.A. ("Mother") appeals the trial court's order granting the Department of Child Services's ("DCS") petition seeking termination of Mother's parental rights as to H.A., B.A., and J.A. ("Children"). Mother contends that there was insufficient evidence to support the decision to terminate her parental rights.

We affirm.

# Facts and Procedural History

Mother gave birth to H.A. in 2005, B.A. in 2006, and J.A. in 2007. On December 6, 2010, the Children were adjudicated as Children in Need of Services ("CHINS") after an incident in which Mother was found unresponsive as a result of alcohol consumption, and required resuscitation and emergency medical assistance ("first CHINS case"). The first CHINS case was closed in 2011.

In October 2012, Mother's then-boyfriend, Cordell "Memphis" Hairston ("Hairston"), beat H.A., leaving marks. H.A.'s injuries were discovered and reported to the Monroe County Department of Child Services. On January 11, 2013, all three children were subsequently adjudicated as CHINS. In its finding that the Children were CHINS, the trial court found based upon Mother's admissions that Hairson had battered both H.A. and B.A. in the past.

DCS commenced providing services, and the Children remained in the home. DCS attempted to provide services to Mother, the Children, and Hairston.

Though Hairston initially expressed willingness to participate in services, he ultimately did not avail himself of DCS-provided services.

[6] In 2013, after Hairston refused to participate in DCS-provided services, the Children were removed from the home, and would not be returned to Mother's care except during supervised visitation. Mother developed a safety plan with assistance from service providers. Because Hairston had refused to participate in DCS-provided services after having beaten H.A., the safety plan required that Mother and the Children have no contact with Hairston.

[7] In November 2013, H.A. revealed that she had been molested by Jerry Owens ("Owens"), an acquaintance of Mother and the Children's maternal grandmother. During ongoing team meetings in the CHINS action. The safety plan was updated to require no contact with Owens, and the plan left in-place the requirement that Mother have no contact with Hairston.

[8] During the course of the CHINS proceedings, mother alternately denied and admitted having ongoing contact with Hairston, and Bloomington Police Department officers were called to respond to several incidents involving Mother and Hairston. The latest of these incidents involving police occurred on April 15, 2014, during which police were called to Hairston's residence. Police found Mother outside the home after having attempted to force open the door; mother claimed that she was attempting to retrieve property from Hairston, including a dog. Even after this, Mother remained in contact with Hairston by telephone.

In March 2014, information came to DCS's attention, which DCS conveyed to several of the contractors providing services to Mother and the Children. As a result of this information, two of the contractors ceased providing therapeutic services and supervision of Mother's visits with the Children, and new service providers were selected.[1]

On March 4, 2014, DCS filed its petition to terminate Mother's parental rights.

An evidentiary hearing was conducted on June 23, 2014.

On July 24, 2014, the trial court issued its order terminating Mother's parental rights. This appeal ensued.

# Discussion and Decision

## Standard of Review

Mother appeals the termination of her parental rights. Our standard of review is highly deferential in such cases. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the

---

[1] The nature of the information that caused the change in services was not disclosed in admissible evidence during the evidentiary hearing, and there was no documentation provided to this Court on this matter.

witnesses. *Id.* We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.*

[14] Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[15] Indiana Code section 31-35-2-4(b)(2) sets out the elements that DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

> (A)  That one (1) of the following is true:
>
>> (i)  The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> (ii)  A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>>
>> (iii)  The child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B)  That one (1) of the following is true:

> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
> >
> > (C) That termination is in the best interests of the child; and
> >
> > (D) That there is a satisfactory plan for the care and treatment of the child.

[16] The requirements of Subsection 31-35-2-4(b)(2)(B) are written in the disjunctive, and thus DCS need only prove one of the three subsections. *L.S.*, 717 N.E.2d at 209.

[17] Here, the trial court entered findings of fact that CHINS adjudications had been twice entered regarding each of the Children: a first CHINS adjudication was entered as to each child on December 6, 2010, and a second CHINS adjudication was entered as to each on January 11, 2013. Each adjudication was established at the evidentiary hearing on the termination petition through admission into evidence of copies of the orders establishing the CHINS adjudications. Thus, while Mother argues that DCS failed to meet its

evidentiary burden as to the other prongs of Subsection 31-35-2-4(b)(2)(B), there was sufficient evidence to satisfy the statutory requirement on this point.[2]

[18] Mother also contends that DCS failed to adduce sufficient evidence that termination of her parental rights was in the Children's best interests. When determining what is in the best interests of a child, the court must look beyond the factors identified by DCS and consider the totality of the evidence. *In re J.C.*, 994 N.E.2d 278, 289-90 (Ind. Ct. App. 2013). The court must subordinate the parent's interests to those of the child, and need not wait until a child is harmed irreversibly before terminating the parent-child relationship. *Id.* at 290. "A parent's historical inability to provide a suitable environment, along with a current inability to do the same, supports finding termination of parental rights is in the best interests of the children." *Id.*

[19] Here, the Children were removed from the home because Hairston refused to participate in DCS-provided services after using excessive physical discipline on H.A. and M.A. Part of the safety plan for the Children, the development of which Mother participated in, required that Mother was to have no contact with Hairston or, later, with Owens; Mother was aware of this requirement. Yet Mother continued to be in contact with both men, and did not pursue protective orders against them. Despite the requirement of no contact, on April

---

[2] We note that Mother's brief before this Court wholly disregards Subsection 31-35-2-4(b)(2)(B)(iii). Mother's brief omits that prong from the quotation of the applicable statutory provisions and, as a result, misquotes the statute. (Appellant's Br. at 5.)

15, 2014, Mother went to Hairston's home, kicked at Hairston's door, and attempted to retrieve property from him; this resulted in a police run to Hairston's residence. Mother continued to have phone contact with Hairston, despite testifying during the evidentiary hearing on DCS's petition to terminate her parental rights that the Children were removed from the home because of Hairston's treatment of H.A.

[20] In addition, though Mother engaged DCS services, after more than a year of supervised visitation Mother did not demonstrate substantial and consistent improvement in managing the Children's sometimes-violent emotional and behavioral outbursts. After the Children were removed from the home, Mother never moved beyond supervised visitation with the Children. Catherine Colbert, a social worker for a DCS contractor, and Melissa Richardson, who supervised visitation between Mother and the Children, both testified that they did not believe that the Children could be safely returned to Mother's care as a result of her inability to manage the Children's behaviors independently of supervisory assistance. We accordingly find no error in the trial court's conclusion that termination of parental rights was in the best interests of the Children.

# Conclusion

[21] The trial court did not err when it terminated Mother's parental rights as to the Children. We accordingly affirm the judgment.

Affirmed.

Robb, J., and Brown, J., concur.