## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 16 2018, 10:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of A.Y.L., Minor Child, and A.L., Mother, | January 16, 2018 |
| *Appellant-Respondent,* | Court of Appeals Case No. 09A02-1708-JT-1960 |
| v. | Appeal from the Cass Circuit Court |
| Indiana Department of Child Services, | The Honorable Leo T. Burns, Judge |
| *Appellee-Petitioner* | Trial Court Cause No. 09C01-1702-JT-4 |

**Altice, Judge.**

## Case Summary

[1] A.L. (Mother) appeals following the termination of her parental rights to her daughter, A.Y.L. (Child). On appeal, Mother argues that the trial court's conclusion that termination of her parental rights is in Child's best interests is clearly erroneous.

[2] We affirm.

## Facts & Procedural History

[3] At the time of her birth in December 2015, Child tested positive for opiates and experienced withdrawal symptoms, which caused her to be admitted to the NICU. Mother admitted to Department of Child Services (DCS) Family Case Manager (FCM) Joshua Bault that she had used heroin in the early stages of her pregnancy and shortly before Child's birth. As a result of these events, Child was removed from Mother's care and placed with her biological father, D.P. (Father),[1] upon her release from the hospital in early January 2016.

[4] On February 9, 2016, Father was arrested on several charges, including dealing in heroin. Because Father was no longer available to care for Child, she was placed in foster care. On February 10, 2016, Child was adjudicated a Child in Need of Services (CHINS). Following a dispositional hearing, Mother was ordered to refrain from using drugs, complete a substance abuse assessment and follow all treatment recommendations, submit to random drug screens,

---

[1] Father's parental rights were also terminated, but he does not participate in this appeal. Accordingly, our discussion of the facts is limited to those pertinent to the termination of Mother's parental rights.

participate in home-based case management, and attend all scheduled visitation, among other things.

[5] Mother completed a substance abuse assessment and it was recommended that she complete inpatient treatment followed by intensive outpatient treatment. DCS made several attempts to get Mother into treatment, but she failed to show up. Mother did not always make herself available for drug screens, and when she did, she tested positive for heroin numerous times. Mother finally attended inpatient drug treatment in December of 2016. Upon her release, however, Mother refused to attend outpatient treatment as recommended and she relapsed within a couple of weeks.

[6] DCS referred Mother to Four County Counseling Center (Four County) for home-based case management and supervised visitation, but her participation in these services was sporadic at best. Mother attended only a few sessions with her home-based case manager, and although she was scheduled to have supervised visitation five times a week for one hour at a time, Mother usually showed up only one to three times per week. For approximately one week after her release from inpatient drug treatment, Mother attended all scheduled visits, but when she relapsed, she again stopped showing up. By the end of January 2017, Four County discharged Mother from services because it had lost all contact with her. Four County briefly reinstated services in April 2017, but Mother's participation remained inconsistent and ceased altogether in May 2017 when Mother was arrested in Utah for possession with intent to distribute methamphetamine and hashish.

DCS filed its petition to terminate Mother's parental rights on February 27, 2017. A factfinding hearing was held on June 7, 2017, and on July 30, 2017, the trial court issued its order terminating Mother's parental rights. Mother now appeals.

## Facts & Procedural History

When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *In re D.D.,* 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside its judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.,* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied.* Thus, if the evidence and inferences support the decision, we must affirm. *Id.*

The trial court entered findings in its order terminating Mother's parental rights. When the trial court enters specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous

only if the findings do not support the court's conclusions or the conclusions do not support the judgment thereon. *Id.*

[10] We recognize that the traditional right of parents to "establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.,* 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied.* Although parental rights are of constitutional dimension, the law provides for the termination of these rights when parents are unable or unwilling to meet their parental responsibilities. *In re R.H.,* 892 N.E.2d 144, 149 (Ind. Ct. App. 2008). In addition, a court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding the termination. *In re K.S.,* 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *Id.*

[11] Before an involuntary termination of parental rights may occur in Indiana, DCS is required to allege and prove by clear and convincing evidence, among other things:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services[.]

Ind. Code § 31-35-2-4(b)(2)(B). DCS must also prove by clear and convincing evidence that termination is in the best interests of the child. I.C. § 31-35-2-4(b)(2)(C).

[12] Mother does not challenge the trial court's finding pursuant to subsection (b)(2)(B)(i) that there is a reasonable probability that the conditions resulting in Child's removal and continued placement outside her care will not be remedied. Rather, she argues that the trial court's conclusion that termination is in Child's best interests is clearly erroneous.

[13] In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re J.C.*, 994 N.E.2d 278, 290 (Ind. Ct. App. 2013). In so doing, the trial court must subordinate the interest of the parent to those of the child, and the court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). Our Supreme Court has explained that "[p]ermanency is a central consideration in determining the best interests of a child." *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009). "Moreover, we have previously held that the recommendations of the case manager and court-appointed advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing

evidence that termination is in the child's best interests." *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[14] Mother takes issue with a number of the trial court's specific findings. All of the challenged findings provide, more or less, that Mother has willfully disregarded her obligations to Child. Mother argues that such findings are unsupported by the evidence and directs our attention to evidence that Mother was affectionate with Child and cared for her during supervised visits. Mother's argument is nothing more than a request to reweigh evidence, which we will not do on appeal. Although Mother interacted with Child appropriately during supervised visitation, Mother attended less than half of her scheduled visits. Indeed, Mother missed over one hundred scheduled visits. Moreover, Mother did not follow through with drug treatment as ordered, she continued to test positive for heroin, and by the time of the termination hearing, she was incarcerated in Utah for possession of methamphetamine and hashish with intent to distribute. All of these facts provide support for the trial court's finding that Mother willfully disregarded her parental obligations.

[15] Mother also argues that the trial court's conclusion that termination is in Child's best interests is clearly erroneous. Her argument is unpersuasive. As the evidence set forth above demonstrates, Mother made virtually no progress toward being able to care for Child during the pendency of the CHINS case. We also note that the Child's guardian ad litem and CASA both opined that termination was in Child's best interests. In sum, Child needs permanency and stability, but Mother's continued drug use, refusal to participate in services, and

failure to visit with Child regularly are more than sufficient to demonstrate that she is unwilling or unable to provide as much. The trial court's conclusion that termination is in Child's best interests is amply supported by the evidence and findings.

[16]     Judgment affirmed.


May, J. and Vaidik, C.J., concur.