## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 29 2016, 9:07 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT T.R.

Thomas C. Allen
Fort Wayne, Indiana

ATTORNEY FOR APPELLANT M.S.C.

Robert H. Bellinger, II
The Bellinger Law Office
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

In the Matter of the Termination of the Parent-Child Relationship of:

J.R., S.R., K.R., & Z.R.,

and

T.R. (Mother) & M.S.C. (Father)

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

February 29, 2016

Court of Appeals Case No.
02A03-1507-JT-991

Appeal from the Allen Superior Court

The Honorable Charles F. Pratt, Judge

Trial Court Cause No.
02D08-1410-JT-130
02D08-1410-JT-131
02D08-1410-JT-132
02D08-1410-JT-133

**Bailey, Judge.**

# Case Summary

[1] T.R. ("Mother"), mother of J.R., S.R., K.R., and Z.R. (collectively, "Children"), and M.S.C. ("Putative Father"), the alleged biological father of Z.R., appeal the termination of their parental rights upon the petition of the Allen County Department of Child Services ("DCS"). We affirm.

# Issue

[2] Mother presents one issue for review, and Putative Father presents two. We consolidate and restate these issues as: whether DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination decision.

# Facts and Procedural History

[3] Mother and C.R. ("Legal Father") were married in 2005 and divorced in 2014. All four Children were born during the marriage. However, K.R.'s biological father is unknown, and Z.R.'s biological father is Putative Father.[1]

[4] On or about November 15, 2012, police responded to an incident of domestic battery between Mother and her oldest son from a previous relationship, K.C.

---

[1] Although Putative Father did not establish paternity during these proceedings, Mother testified, and a DNA test indicated, that Putative Father is Z.R.'s biological father.

Authorities discovered that Mother's home, where Children were living, was in "deplorable condition" with trash, dirty clothes, animal feces, and dried vomit on the floor; dirty dishes and rotten food in the kitchen; and little food for Children and no formula for Z.R. (Exhibit 8.) Children were removed from the home and, four days later, placed in Legal Father's care.

[5] Children were adjudicated Children in Need of Services ("CHINS") on February 20, 2013. That same day, the court held a dispositional hearing and ordered Mother to, among other conditions, submit to a diagnostic assessment, obtain drug and alcohol evaluations, enroll in and complete home-based services with a focus on household management and parent education, submit to random drug screens, and participate in visitation with Children. At a later dispositional hearing, the court ordered Putative Father to establish paternity as to Z.R.

[6] In 2013, Children were removed from Legal Father's home and placed in foster care. On October 9, 2014, DCS filed petitions to involuntarily terminate Mother's and Legal Father's parental rights as to Children and Putative Father's rights as to Z.R. Hearings were held on March 16, 2015, March 25, 2015, and April 6, 2015. On June 30, 2015, the trial court entered orders terminating Mother's parent-child relationships with Children and Putative

Father's parent-child relationship with Z.R.[2] Mother and Putative Father now appeal.

# Discussion and Decision

[7] Our standard of review is highly deferential in cases concerning the termination of parental rights. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.* When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* A judgment is clearly erroneous if the findings do not support the court's conclusions or the conclusions do not support the judgment. *Id.*

---

[2] Legal Father's parental rights were not terminated and he does not participate in this appeal.

[8] Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Id.* The purpose of terminating parental rights is not to punish the parents, but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[9] Indiana Code section 31-35-2-4(b)(2) sets out the elements that DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

> (A)    that one (1) of the following is true:
>
> > (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.
> >
> > (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> >
> > (iii)    The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B)    that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

If the court finds that the allegations in a petition described above are true, the court shall terminate the parent-child relationship. I.C. § 31-35-2-8(a).

[10] We first turn to Putative Father's contention that there was insufficient evidence to support the trial court's termination order. Putative Father does not challenge the court's determinations under Indiana Code sections 31-35-2-4(b)(2)(A) (removal), (C) (best interests), or (D) (satisfactory plan). Rather, Putative Father challenges the determination under Section (B), raising objections under both subsections (i) (reasonable probability that the conditions of removal or reasons for placement outside the home will not be remedied) and (ii) (reasonable probability that the continuation of the parent-child relationship poses a threat to the child's well-being).

[11]     Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court need only find that one of the three requirements of subsection (b)(2)(B) has been established by clear and convincing evidence. *See L.S.*, 717 N.E.2d at 209. Because we find it dispositive under the facts of this case, we review only whether DCS established, by clear and convincing evidence, that there is a reasonable probability that the conditions of removal or reasons for placement outside of Putative Father's care will not be remedied. *See* I.C. § 31-35-2-4(b)(2)(B)(i).

[12]     We engage in a two-step analysis to determine whether the conditions that led to Z.R.'s placement outside of Putative Father's home likely will not be remedied. *In re K.T.K.*, 989 N.E.2d 1225, 1231 (Ind. 2013). First, we ascertain what conditions led to her placement and retention in foster care, and second, we determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* In making these decisions, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014).

[13]     Z.R. was born in November 2011. Putative Father testified that he last saw Z.R. that month. Putative Father was then arrested and, on April 19, 2012, pleaded guilty to Robbery, as a Class B felony. He was convicted of a separate count of Robbery, as a Class B felony, on May 10, 2013. Putative Father was incarcerated at the time Z.R. was removed from Mother's home and thus he was unable to care for Z.R. He was incarcerated throughout the termination

proceedings, and his earliest projected release date is in August 2026, when Z.R. will be almost fifteen years old. Z.R.'s Court-Appointed Special Advocate ("CASA") Julia McIntosh testified that Putative Father "has had very little, if any, contact" with Z.R. and "there's not a way he can meet her needs right now." (Tr. 353.)

[14] Putative Father argues that DCS failed to carry its burden because DCS did not show that Putative Father would not receive time cuts, sentence modifications, or alternative sentencing that would allow him to care for Z.R. earlier than his projected release date. Yet Putative Father points to no evidence presented that supports his argument that he is or could be eligible for release earlier than the date DCS provided. The trial court's conclusion that there is a reasonable probability that the reasons for Z.R.'s placement outside of Putative Father's care will not be remedied thus was not clearly erroneous.

[15] We next turn to Mother's contention that there was insufficient evidence to support the trial court's order terminating her parent-child relationships with Children. Mother does not challenge the court's determinations under Indiana Code sections 31-35-2-4(b)(2)(A), (B), or (D). Instead, Mother argues that there was insufficient evidence to support the court's conclusion that termination is in Children's best interests. *See* I.C. § 31-35-2-4(b)(2)(C).

> Pursuant to Indiana Code section 31-35-2-4(b)[(2)](C), DCS must provide sufficient evidence "that termination is in the best interests of the child." In determining what is in the best interests of a child, the trial court is required to look beyond the factors identified by the DCS and consider the totality of the evidence.

> *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). In so doing, the trial court must subordinate the interests of the parent to those of the child. *Id.* The court need not wait until a child is harmed irreversibly before terminating the parent-child relationship. *Id.* Recommendations of the case manager and court-appointed advocate, in addition to evidence the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.*

*In re J.C.*, 994 N.E.2d 278, 289-92 (Ind. Ct. App. 2013), *reh'g denied*.

[16] As the trial court found, the record shows that Mother has struggled to maintain employment and stable housing since Children were removed from her care. Since that time, Mother has had five jobs, and at the time of the termination hearings, had been unemployed since July 2014. She had at least six different residences during the pendency of the CHINS and termination proceedings.

[17] Mother's visitation with Children has been inconsistent. Ashley Fisher, Mother's family coach, testified that visitation was suspended several times due to Mother's failure to attend or cancel in advance. In May 2014, Mother requested that visitation be suspended because she had shingles. Although Mother quickly obtained documentation that she was misdiagnosed and did not have shingles, she did not provide DCS that documentation until August 2014. As a result, visitation remained suspended and Mother did not visit Children for four months. Since Children were removed from Mother's care, she has never progressed beyond supervised visitation.

[18] Mother has admitted that she is addicted to pain medication. Mother was referred for substance abuse counseling, but twice failed to complete treatment in 2013. She underwent two re-assessments in 2014, but both times her services were closed for noncompliance. Between August 2014 and February 2015, she tested positive for oxycodone, hydrocodone, and alprazolam (commonly known as Xanax), but did not provide proof that she had been prescribed these medications.[3] Because of Mother's continued "inability to remain clean and sober out in the community" (Tr. 136), a substance abuse therapist recommended that Mother receive inpatient treatment. Mother, however, declined.

[19] Family Case Manager Mary Connell ("FCM Connell") recommended that Mother's parental rights be terminated due to Mother's inability to move beyond supervised visitation, unstable employment and housing situations, continued positive drug screens, failure to complete substance abuse treatment, and inconsistent visitation with Children. (Tr. 239.) Children's CASA also recommended termination, citing Mother's non-compliance with services, failure to complete substance abuse classes, inconsistent visitation, and because, in over two years, there was "little progress." (Tr. 352.) Both FCM Connell and the CASA noted Children's need for permanency.

---

[3] Mother also submitted to six urinalysis drug screens in 2014 that tested "positive." The results of the screens were compiled as Exhibits 37 through 42, but were not admitted into evidence.

[20] Although Mother argues that DCS failed to meet its burden because the court did not find that a continued relationship between Mother and Children would be harmful to Children, "the court need not wait until a child is harmed irreversibly before terminating the parent-child relationship." *In re J.C.*, 994 N.E.2d 278 at 292. Here, the record is replete with Mother's noncompliance with services, ongoing substance abuse, inconsistent visitation, and inability to maintain stable employment or housing. Mother's argument that, despite this evidence, her parental rights should not have been terminated because an "ongoing relationship with the children was a positive benefit for the children" (Appellant-Mother's Br. 14) is an invitation to reweigh the evidence, which this Court will not do.[4] *See In re A.A.C.*, 682 N.E.2d at 544.

[21] The trial court's conclusion that termination was in Children's best interests was not clearly erroneous.

# Conclusion

[22] DCS established, by clear and convincing evidence, the requisite elements of Indiana Code section 31-35-2-4(b)(2). Accordingly, the trial court's judgment of involuntary termination of Mother's parent-child relationships with Children

---

[4] Because the court's order contemplates reunification of Children with Legal Father, Mother also argues "there is no reason why there shouldn't be a continuation of [her] relationship with the children in a noncustodial fashion." (Appellant-Mother's Br. 15.) Mother, however, cites no authority to support the argument that termination of parental rights is inappropriate when a child eventually could be reunified with another parent who has shown a willingness, if not current ability, to care for the child. Accordingly, this argument is waived. *See* Ind. Appellate Rule 46(A)(8)(a).

and Putative Father's parent-child relationship with Z.R. was not clearly erroneous.

[23] Affirmed.

Vaidik, C.J., and Crone, J., concur.