## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 28 2018, 9:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald J. Frew
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of C.B.(1) and C.B.(2) (Minor Children) and

C.B. (Father),[1]

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

August 28, 2018

Court of Appeals Case No. 18A-JT-579

Appeal from the Allen Superior Court

The Honorable Charles F. Pratt, Judge

Trial Court Cause Nos.
02D08-1705-JT-101
02D08-1705-JT-102

---

[1] Mother appeals the termination of her parental rights in a separate appeal (Case No. 18A-JT-456).

**Mathias, Judge.**

[1]    C.B. ("Father") appeals the Allen Superior Court's involuntary termination of his parental rights of his children, C.B. (1) and C.B. (2) (collectively, "the Children"). Father appeals and argues that the evidence was insufficient to establish that terminating his parental rights was in the Children's best interests.

We affirm.

## Facts and Procedural History

[2]    C.B. (1) was born to Father and P.L. ("Mother") on November 15, 2005, and C.B. (2) was born to Father and Mother on May 13, 2007. Mother and Father shared custody, and Father had the Children in his care for approximately five years.[2] In July 2014, Mother asked Father to return the Children to her. Father agreed, and the Children resided with Mother for approximately three months.

[3]    On or about October 1, 2014, Mother left her three-year-old child home alone and unattended for at least four hours. *See* Appellant's App. p. 15. The child was found wandering the hallway of the apartment complex where Mother and the Children resided. Police were dispatched to the apartment complex, and when the police arrived, Mother fled from police officers. As a result, Mother was incarcerated, and thus, Mother was unable to care for the Children. *Id.*

---

[2] Mother also has three other children by different fathers.

[4] On October 24, 2014, the Indiana Department of Child Services ("DCS") filed a petition alleging that Mother's five children were children in need of services ("CHINS"). The CHINS petition also alleged that Mother smoked marijuana, and "marijuana blunts and drug paraphernalia" were found in the home within the reach of the Children. Ex. Vol., State's Ex. 10, p. 3.

[5] In regard to Father, the CHINS petition alleged the following:

1.     [Father] is the alleged father of [the Children].

2.     [Father] has not established paternity for [the Children].

3.     [Father] has not visited or maintained regular contact with [the Children].

4.     [Father] has not provided material or financial support on a regular basis for [the Children].

5.     [Father] is unwilling or unable to provide care and supervision for [the Children].

6.     [Father's] lack of contact with [the Children] negatively impacted his ability to be aware of their health and well-being.

*Id.* at 3–4.

[6] On October 27, 2014, the Children were adjudicated CHINS, and the court entered a dispositional decree the same day. The dispositional decree laid out a parent participation plan that required Father to establish paternity of the

Children, participate in visitation, and comply with the parent participation plan that was incorporated into the dispositional decree.[3] *See* Ex. Vol., State's Ex. 16, pp. 2–3. Father established paternity of the Children but failed to comply with any other condition of the dispositional decree. Father currently lives in Illinois. Over the course of the past four years, except for one visit in January 2016, Father has failed to have any meaningful contact with the Children and did not attend any of the review hearings or permanency hearings.[4] Throughout the CHINS and termination proceedings, the Children were placed in foster care.

[7] On June 1, 2017, approximately three years after the original CHINS petition was filed, DCS filed a petition to terminate Father's parental rights. At the February 27, 2017, fact-finding hearing Father failed to appear but was represented by counsel. The trial court issued its findings of fact, in which it found, in relevant part:

> 16.　In the present underlying CHINS case, the [Children] have been placed outside of the care of [Father] for a period of

---

[3] Father was ordered to refrain from all criminal activity; maintain clean, safe, and appropriate sustainable housing at all times; notify DCS within forty-eight hours of all changes in household composition, housing, and employment; cooperate with caseworkers, Guardian ad Litem, and Court Appointed Special Advocate; attend all case conferences, maintain contact with DCS, and accept home visits whether announced or unannounced; provide caseworkers with paternity, finances, insurance, and family history information; provide signed consents to caseworkers for release and exchange of information; provide the Children with clean, appropriate clothing at all times; and fully cooperate with all rules of the Children's placement. *See* Ex. Vol, State's Ex. 16, pp. 120–121

[4] Throughout the termination proceedings, the trial court found that the State had provided adequate process of service to Father, that Father did not respond, and Father had not visited the children on a regular basis. *See* Appellant's App. pp. 22–26. The trial court reaffirmed a plan for the termination of parental rights on February 27, 2016, and the Children continued to stay in licensed foster care. *See id.* at 16.

more than six (6) months since the entry of the [d]ispositonal [d]ecree.

\*\*\*

18.    [. . .] [Father] last visited the children in January 2016. [. . .]

Appellant's App. pp. 24. And in its conclusions of law, the court found that:

2.    [ . . . ] By the clear and convincing evidence the court determines that there is a reasonable probability [the] reasons that brought about the [C]hildren's placement outside the home will not be remedied. [. . .] The alleged [Father] ha[s] not visited or provided for the [C]hildren.

3.    [. . .] In this case the [C]hildren's Court Appointed Special Advocate [("CASA")] has concluded that termination of parental rights is in their best interests. The [C]hildren have been removed from their parent's care for a significant time and are doing well in their respective placements. . .[The Children] have been in their foster placement since April 2015.

4.    [DCS] has thus proven by clear and convincing evidence that the allegations of the petitions are true and that the parent-child relationships should be terminated.

*Id.* at 25–26 (internal citations omitted). The trial court ordered that:

3.    The parent–child relationships between [the Children] . . . and [Father] are hereby terminated and severed. All rights, privileges[,] immunities, duties, and obligations, including the right to consent to adoption, pertaining to that relationship are permanently terminated.

*Id.* at 26. Father now appeals and argues that DCS did not present sufficient evidence to establish that terminating Father's parental rights was in the Children's best interests.

## Standard of Review

[8] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied.*

[9] Here, the trial court entered specific factual findings and conclusions when it terminated Father's parental rights. When a trial court's judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second, we determine whether the evidence supports the judgment. *Id.* "Findings are clearly erroneous when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *L.S.*, 717 N.E.2d at 208.

Before an involuntary termination of parental rights may occur in Indiana, the State is required to allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a [CHINS];
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

"The State's burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *In re G.Y.,* 904 N.E.2d 1257, 1260–61 (Ind. 2009) (quoting Ind. Code § 31-37-14-2). If the trial court finds that the allegations in a petition described in section 4 of this chapter are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

# Discussion and Decision

[12] Father only presents one cogent argument.[5] Specifically, Father argues that the trial court erred in concluding that termination was in the Children's best interests. The trial court must consider the totality of the evidence when determining whether termination of parental rights is in the best interests of a child. *In re J.C.*, 994 N.E.2d 278, 290 (Ind. Ct. App. 2013). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010).

[13] Father has been absent from the Children's lives for over four years. After the Children were returned to Mother before the CHINS adjudication, Father discontinued all communication with the Children. Father did not appear at any hearings that were held. He ignored phone calls from the Children and

---

[5] In his brief, Father states that the trial court erred because DCS failed to prove that the conditions that resulted in the Children's removal will not be remedied and that Father has not represented any threat to the Children's well-being. *See* Appellant's Br. at 10, 13. However, Father fails to comply with Appellate Rule 46(A)(8)(a), which requires arguments to be cogently and coherently articulated, and supported by citation to the record. Therefore, we will not address those arguments. *See Young v. Butts*, 685 N.E.2d 147, 151 (Ind. Ct. App. 1997) (stating "[o]n review, we will not search the record to find a basis for a party's argument, nor will we search the authorities cited by a party in order to find legal support for its positions.") (citation omitted).

made no effort to have any contact with the Children. Father has not provided financial support for the Children.

[14] Furthermore, the Children have been in the same foster home since April 2015. The foster parents have provided adequate housing, stability and supervision for the Children, including obtaining and providing medical treatment. And the trial court found that the Children are "doing well in their respective placements." Appellant's App. p. 26. Moreover, the Children's CASA also testified that her recommendation for the Children's best interests "would be termination of parental rights, [and] adoption for the [Children]." Tr. Vol. II, p. 184.

[15] Based on the totality of the evidence, we conclude that there is clear and convincing evidence to support the trial court's finding and ultimate determination that termination of Father's parental rights is in the Children's best interests.

# Conclusion

[16] For these reasons, we conclude that the trial court did not err when it terminated Father's parent-child relationship with C.B. (1) and C.B. (2). Accordingly, we affirm.

Bailey, J., and Bradford, J., concur.