## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**ATTORNEY FOR APPELLANT**

Katherine N. Worman
Evansville, Indiana

**ATTORNEYS FOR APPELLEE**

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of:<br><br>Am.S. and Av.S., *(Minor Children)*<br><br>and<br><br>C.S. *(Mother)*,<br><br>*Appellant-Respondent,*<br><br>v.<br><br>The Indiana Department of Child Services,<br><br>*Appellee-Petitioner.* | March 6, 2019<br><br>Court of Appeals Case No.<br>18A-JT-2348<br><br>Appeal from the Vanderburgh Superior Court<br><br>The Honorable Brett J. Niemeier, Judge<br><br>The Honorable Renee A. Ferguson, Magistrate<br><br>Trial Court Cause Nos.<br>82D04-1710-JT-2012<br>82D04-1710-JT-2013 |

**Robb, Judge.**

# Case Summary and Issues

[1] C.S. ("Mother") appeals the termination of her parental rights as to two of her children, Am.S., born July 22, 2008, and Av.S., born July 4, 2012 (collectively the "Children").[1] Mother presents two issues for our review: (1) whether the juvenile court abused its discretion by granting DCS' motion to reopen evidence after the parties rested; and (2) whether the juvenile court's order terminating Mother's parental rights was clearly erroneous. Concluding the juvenile court did not abuse its discretion and its termination order was not clearly erroneous, we affirm.

# Facts and Procedural History

[2] On August 31, 2016, Indiana Department of Child Services ("DCS") family case manager, Jennifer Mullins, assessed and substantiated a claim that Am.S. had been waiting at a bus stop for over an hour unsupervised.[2] Another DCS case manager had seen Am.S. waiting at the stop on her way to a visit and Am.S. was still there one hour later. Am.S. was taken to the local DCS office. After Am.S. told DCS who her mother was, an investigation revealed that Mother had two prior DCS substantiations involving substance abuse. DCS and local police attempted to locate Mother. Two hours later, Mother arrived

---

[1] Mother has another child, age 20, who is not subject to this appeal. Av.S.'s father's parental rights were terminated on November 21, 2017, and he does not participate in this appeal. Am.S.'s father is unknown.

[2] Am.S. was located nine blocks away from Mother's house and would have had to cross a major highway to return home. Transcript, Volume II at 77.

at the office with Av.S. Due to Mother's "erratic" behavior, Mullins asked Mother to take a drug test. Transcript, Volume II at 78. Mother refused but admitted to using THC and methamphetamine. Mother suggested Am.S. stay with Mother's sister who was living in the same house; however, the sister admitted that she would also test positive for THC. Due to a lack of parental supervision, Mother's history of substance abuse and admission to ongoing substance abuse, as well as her anxiety and depression, the Children were removed from her care.

[3] On September 2, DCS filed verified petitions alleging the Children were children in needs of services ("CHINS").[3] At the initial/detention hearing, the juvenile court found that removal of the Children was in their best interests and detention was necessary for their protection. The Children were adjudicated CHINS on September 13 and Mother was given provisional orders to obtain a substance abuse and mental health evaluation, follow treatment recommendations, submit to random drug screens, remain drug and alcohol free, and attend visitation with the Children.

[4] Mother was subsequently arrested on September 27 on drug related offenses and placed on probation. Exhibits, Volume I at 105-06. Mother was in treatment at Deaconess Cross Pointe from October 4 through 7 and a

---

[3] Although DCS filed separate petitions for each child, the cases are identical and contemporaneous with the other, including the termination orders. Thus, we only refer to one child's Chronological Case Summary ("CCS").

dispositional hearing was held on October 11. As part of the parental participation plan, Mother was ordered to: participate in parent aide and out-patient mental health therapy; obtain a substance abuse evaluation and follow any treatment recommendations; submit to random drug screens; attend supervised visitation; and remain drug and alcohol free. *See* Appealed Order at 33. In Mother's criminal case, the State filed a petition to revoke her probation on October 12 and Mother later admitted to the allegations that she used heroin on October 1 and 2, tested positive for opiates on October 7, used heroin and THC on October 8, tested positive for opiates, oxycodone, and THC on October 10, and failed to appear for residential treatment on October 12. Exhibits, Vol. I at 107, 177-78.

[5] Mother tested positive for opiates, benzodiazepines, amphetamine, and methamphetamine on November 10. She admitted to her probation officer that she had used methamphetamine on November 9 and heroin and clonazepam on November 10. *Id*. at 179. Mother was treated at Brentwood Meadows Inpatient Substance Abuse Program from November 10 through 19. On November 22, Mother's probation officer filed a petition to revoke probation for failing to appear for the partial hospitalization program and a bench warrant was issued. Mother was arrested on February 1, 2017, and incarcerated until February 27 when she pleaded guilty to the drug charges. Mother was placed on probation and ordered to complete treatment. In May 2017, Mother's probation officer filed another petition to revoke her probation for non-

compliance with treatment at Counseling for Change and alleged that Mother provided diluted urine samples for drug screening. *Id*. at 184.

[6] On August 15, the juvenile court held a permanency hearing in which the Children's permanency plan was changed from reunification to reunification with a concurrent plan of adoption. Mother admitted the allegations in the petition to revoke on August 31 to the trial court handling her criminal case and was sentenced to work release. On October 2, while in work release, Mother overdosed on heroin and was provided a dose of Narcan. Mother was then ordered to serve the remainder of her sentence in the Indiana Department of Correction.

[7] On October 30, DCS filed its Verified Petitions to Terminate the Parent-Child Relationship of Mother and the juvenile court appointed a court appointed special advocate ("CASA") for the Children. The juvenile court held a fact-finding hearing in this matter on January 16, June 5, and June 19, 2018. Weeks later, Mother was arrested and charged with dealing in methamphetamine, maintaining a common nuisance, unlawful possession of a syringe, possession of methamphetamine, and possession of paraphernalia with a prior conviction. *See* Appellant's Appendix, Volume II at 64. DCS filed a Motion to Reopen Evidence on July 27 and the juvenile court reconvened to hear arguments on the motion. Over Mother's objection, the juvenile court granted DCS' motion and took judicial notice of the new criminal charges against Mother, "not going to the weight of any evidence or whether the allegations are true or not but just

for the mere fact that a new case has been filed and [M]other is incarcerated on that new filing." *Id.* at 9.

[8] On September 11, the juvenile court granted DCS' petitions to terminate Mother's parental rights and recounted the facts set forth above and concluded:[4]

> C. Facts Relating to Child's Continued Removal from Parents' Home and Care: Reasonable Probability of Parent Not Remedying Reasons for Removal, Threat to Child's Wellbeing
>
> 1. Throughout the duration of the CHINS case, Mother has failed either to participate in or to benefit from the services ordered by the CHINS Court. . . .
>
> * * *
>
> 6. . . .Due to Mother's failure to comply with random drug screens during the CHINS cause, she has been unable to demonstrate that she has remained drug and alcohol free. Mother's involvement in multiple criminal matters related to her use of illegal substances while under the jurisdiction of this Court clearly demonstrates her failure to abide by this Court order.
>
> * * *
>
> 15. Mother had previously attended at least three (3) substance abuse facilities prior to this CHINS matter. When asked why she uses drugs, Mother identified herself as a trigger for her drug use, stating that she does not "deal with emotions well." Mother

---

[4] We take this opportunity to commend the juvenile court on its thorough findings of fact and conclusions of law which have aided in our analysis of this case.

acknowledged she has self-medicated with the use of illegal drugs, indicating a correlation between her substance abuse and mental health.

16. Mother's testimony on 6/5/2018 revealed that she has a limited understanding of the impact of her substance abuse, specifically on her ability to function as a parent. Mother's continued use of illegal substances put her in danger of physical harm, or even death. Mother's drug use has resulted in incarceration and it continues to place her in danger of incarceration. . . .

17. After the conclusion of the fact-finding hearing . . . Mother was again arrested and charged with drug-related crimes. . . . While Mother stated during her fact-finding hearing on 6/5/2018 that the ability to see her [Children] is her motivation to stay sober, it appears from her recent actions as if the prospect of being reunited with her [Children] is not enough to dissuade her from a life of poor decisions and persistent drug use.

18. Mother's substance abuse served as one of many conditions leading to the [Children's] initial removal from the home. Mother's testimony described a history of drug use going as far back as 2006, marked by the abuse of multiple illegal substances, as well as several failed attempts at getting sober, even when her own freedom or relationship with her [Children] have been at stake. The Court finds that, despite the intervention of both the CHINS and Criminal Court, Mother has demonstrated an inability to remain sober, as well as a clear pattern of behavior in regard to her substance abuse. She has consistently ignored the orders of the Court and failed to benefit form the services provided her in order to alleviate this concern.

* * *

20. Mother's mental health served as a contributing factor to the [Children's] removal from the home. Despite the CHINS Court order and her own understanding that she could benefit from mental health services, Mother failed to obtain a mental health evaluation during the duration of the CHINS case. As such, Court finds that Mother has failed to address this condition of removal.

* * *

D. Child's Best Interest & DCS Plan for Care and Treatment

* * *

11. Mother has proven herself unable or unwilling to meet her parental responsibilities. Her long history with substance abuse, leading up to her most recent criminal charges for drug-related offenses, provides the Court with the best predictor of her future behavior. Given the persistence of Mother's substance abuse, despite consistent intervention from the CHINS and Criminal Courts, this Court finds there is at least a reasonable probability that her behavior will not change. Further, Mother's habitual patterns of conduct indicate a high probability of future neglect or deprivation of the [Children]. Therefore, this Court finds termination of parental rights is appropriate and consistent with the best interests of the [Children], in order to protect the [Children's] emotional and physical well-being from the threat posed by Mother.

Appealed Order at 5-16. The trial court concluded that there is a reasonable probability that the conditions resulting in Children's removal and continued placement outside the home will not be remedied and that the continuation of the parent-child relationship poses a threat to the Children's well-being. It also

concluded that termination of Mother's parental rights is in the Children's best interests and a satisfactory plan for the care and treatment of the Children exists, namely adoption. *See id.* at 16, 33. Mother now appeals.

# Discussion and Decision

## I. Motion to Reopen Evidence

[9] Mother argues the juvenile court erred by reopening the case to allow DCS to introduce additional evidence of new criminal charges filed against her after the fact-finding hearing. "Evidence must be offered during the course of a trial and it is a matter of discretion whether a [juvenile] court will permit a party to present additional evidence or testimony once the party has rested, once both parties have rested, or after the close of all of the evidence." *In re D.Q.*, 745 N.E.2d 904, 908 (Ind. Ct. App. 2001). A trial court's decision in this respect will be reversed only if there is a clear abuse of discretion. *Id.*

[10] Here, the fact-finding hearing concluded on June 19, 2018. Mother was subsequently arrested and charged for drug-related crimes. Due to the new charges, DCS filed a Motion to Reopen Evidence on July 27 and the juvenile court reconvened to hear arguments on the motion. Over Mother's objection, the juvenile court granted the motion and took judicial notice of a new criminal case against Mother. *See* Appellant's App., Vol. II at 9. The juvenile court stated:

> So just for judicial notice that a new case has been filed against [Mother], not going to the weight of any evidence or whether the allegations are true or not, just for the mere fact that a case has been filed, and [Mother] is incarcerated on that new filing.

Tr., Vol. II at 130.

[11] In its termination order, however, the juvenile court relied on Mother's most recent arrest and found:

> 17. After the conclusion of the fact-finding hearing on the petition to terminate her parental rights on 6/19/2018, Mother was again arrested and charged with drug-related crimes. . . . While Mother stated during her fact-finding hearing on 6/5/2018 that the ability to see her [C]hildren is her motivation to stay sober, it appears from her recent actions as if the prospect of being reunited with her [C]hildren is not enough to dissuade her from a life of poor decisions and persistent drug use.

Appealed Order at 9-10. Mother argues the new information is "highly prejudicial[,]" the information in the probable cause affidavit "possess[es] a risk of unreliability," and is excluded by Indiana Evidence Rule 803(22). Appellant's Brief at 14.

[12] In determining whether there is a reasonable probability that the conditions which led to the Children's removal will not be remedied, the juvenile court is required to judge a "parent's fitness as of the time of the termination proceeding, taking into consideration evidence of changed conditions – balancing a parent's recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or

deprivation." *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). And the juvenile court may consider a parent's criminal history and substance abuse in this determination. *In re N.Q.*, 996 N.E.2d 385, 392 (Ind. Ct. App. 2013). Although Mother had not been convicted of these new charges at the hearing, Mother's recent arrest and incarceration post-trial is highly relevant to this inquiry.

[13] *In re D.Q.*, the State and guardian ad litem ("GAL") appealed the denial of its petition to terminate a mother's parental rights. 745 N.E.2d at 909. The State and GAL alleged the trial court abused its discretion by reopening the case to allow mother to present additional evidence post-trial of a lease agreement and photos of her new apartment. The State adequately cross-examined the mother on the new evidence and offered testimony reaffirming that termination was in the child's best interests. On appeal, we affirmed the trial court's decision reasoning that the State failed to demonstrate how the additional evidence resulted in prejudice. *Id.*

[14] Similarly here, despite Mother's argument that the evidence is prejudicial to her because she has not yet been convicted and she lacked an opportunity to present her own evidence, we conclude Mother has failed to demonstrate *how* the additional evidence of her recent arrest and incarceration, regardless of disposition, is highly prejudicial to her. Therefore, we cannot conclude the juvenile court abused its discretion by considering this evidence. Even if we held otherwise, such an error would be harmless with all of the other evidence that supports the juvenile court's decision to terminate Mother's parental rights.

# II. Termination Order

[15] The Fourteenth Amendment to the United States Constitution protects a parent's right to raise their children. *K.T.K. v. Ind. Dep't of Child Servs.,* 989 N.E.2d 1225, 1230 (Ind. 2013). "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). However, these parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. *In re D.D.*, 804 N.E.2d 258, 264-65 (Ind. Ct. App. 2004), *trans. denied*. Parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities. *Id.* at 265. Involuntary termination of parental rights constitutes the "most extreme sanction" and is considered a "last resort, available only when all other reasonable efforts have failed." *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied, cert. denied*, 534 U.S. 1161 (2002). The purpose of terminating parental rights is to protect children, not to punish parents. *In re D.D.*, 804 N.E.2d at 265.

[16] We review termination of parental rights with great deference, *In re J.C.*, 994 N.E.2d 278, 283 (Ind. Ct. App. 2013), and we do not reweigh the evidence or judge the credibility of the witnesses, *Bester*, 839 N.E.2d at 147. Instead, we consider the evidence and reasonable inferences thereof most favorable to the juvenile court's judgment. *Id.* As required by Indiana Code section 31-35-2-8(c), the juvenile court entered findings of fact and conclusions of law when

terminating Mother's parental rights and we therefore apply a two-tiered standard of review. *K.E. v. Ind. Dep't of Child Servs.*, 39 N.E.3d 641, 646 (Ind. 2015). We first determine whether the evidence supports the findings, then whether the findings support the judgment. *Id.* We will set aside the juvenile court's judgment only if it is clearly erroneous, namely "when the record contains no facts to support [the findings] either directly or by inference." *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997).

[17] To terminate a parent's rights, Indiana Code section 31-35-2-4(b)(2) requires that the State prove the following elements by clear and convincing evidence:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

*See also* Ind. Code § 31-37-14-2 ("A finding in a proceeding to terminate parental rights must be based upon clear and convincing evidence.").

[18]    Here, the juvenile court found that DCS proved both subsections (i) and (ii) of Indiana Code section 31-35-2-4(b)(2)(B) by clear and convincing evidence. Mother challenges the juvenile court's findings in this regard, as well as its finding that termination is in the best interests of the Children. We address each below.

## A.  Remedy of Conditions

[19]    Mother challenges the juvenile court's finding that there is a reasonable probability that the conditions which led to the Children's removal and continued placement outside the home will not be remedied. In determining whether the conditions which resulted in the Children's removal will not be remedied, we engage in a two-step analysis. *In re E.M.*, 4 N.E.3d at 642-43.

> First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied. In the second step, the [juvenile] court must judge a parent's fitness as of the time of the termination proceeding, taking into consideration evidence of changed conditions – balancing a parent's recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. We entrust that delicate balance to the [juvenile] court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. Requiring [juvenile] courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior.

*Id.* at 643 (citations and internal quotation marks omitted). The juvenile court may consider a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, lack of adequate housing and employment, and services offered by DCS to the parent and his or her response to those services. *N.Q.*, 996 N.E.2d at 392.

[20] The Children were initially removed from Mother on August 31, 2016 "[d]ue to lack of parental supervision, Mother's history of substance abuse and admission of ongoing abuse of multiple illegal substances," and Mother's anxiety and depression. Appealed Order at 4. Mother argues she has made improvements since the Children's removal and that a reasonable probability exists that the conditions which resulted in their removal "could be remedied with additional services and time." Appellant's Br. at 19. Unfortunately, the record reveals otherwise.

[21] Evidence of Mother's substance abuse dates back to as early as 2006. In March, August, and October 2006, Mother was charged with possession of paraphernalia. *See* Exhibits, Vol. I at 68, 79, 88. Roughly seven months later, in May 2007, she was charged with possession of cocaine. In 2010, DCS removed Am.S. and Mother's oldest child from Mother and placed them in foster care due to Mother's substance abuse issues. At the time, Mother was using cocaine. Tr., Vol. II at 42. DCS again became involved in 2014 and filed CHINS petitions involving the Children due to Mother's substance abuse issues. Mother was ordered to complete services focused on her substance abuse problem.

[22]     In August 2016, the Children were removed from Mother after Mother admitted she would test positive for THC, non-prescribed medication, and methamphetamine. The Children were adjudicated CHINS on September 13 and Mother was given provisional orders to obtain a substance abuse evaluation, submit to random drug screens, obtain a mental health evaluation, follow any treatment recommendations, attend visitation, and remain drug and alcohol free. Two weeks after the CHINS adjudication, Mother was arrested and charged with several drug offenses. Mother was placed on probation, but petitions to revoke were filed in October and November 2016 for her failure to appear at treatment and submitting positive drug screens.

[23]     Mother was in treatment from October 4 through 7 and again from November 10 through 19, 2016, but failed to begin the partial hospitalization program after her release. In March 2017, Mother began Counseling for Change for substance use disorder treatment, which she attended for a while. However, in April she was discharged for being disruptive in class and again discharged in May for too many absences. DCS case manager Laura Opperman stated that, to her knowledge, Mother had not participated in any substance abuse treatment since she was discharged from Counseling for Change.

[24]     Another petition to revoke probation was filed in May 2017 for non-compliance with counseling and for submitting a diluted urine sample. After her probation was revoked, Mother was ordered to serve her original sentence on work release. While in work release in October, Mother overdosed on opiates and was given Narcan. Exhibits, Vol. I at 126. Mother admitted to using heroin at

the time and was incarcerated to serve the remainder of her sentence from October 2017 until April 15, 2018. Most recently, after the fact-finding hearing in this matter concluded in June 2018, Mother was again arrested in July and charged with several drug related crimes.

[25] As to Mother's compliance with the parent participation plan, Mother was ordered to meet with a parent aide, which she began in December 2016. Mother met with the aide a few times "[b]ut over time she – in April she wouldn't return calls or text messages from the parent aide and then in May and June she just refused to meet with her." Tr., Vol. II at 88. Opperman also testified that although Mother submitted to fourteen drug screens between March and May 2017, twelve of which were negative and two diluted, she missed fifty drug screens between September 22, 2016 and October 3, 2017. She explained that "[Mother] was incarcerated for an additional eleven dates, not including [the] fifty that were missed." *Id*. at 93. Opperman "couldn't say that [Mother] was drug and alcohol free the whole time." *Id*. at 88.

[26] Mother testified that she had not used any illegal substances since her overdose and that she was not at a facility long enough to complete any program, but she did participate in programs, including the RARE program, AA, and NA. Opperman testified that she was aware Mother had completed the RARE program and women's bible study, but no other programs.

[27] As to Mother's mental health issues, she testified that she was diagnosed with anxiety and depression around age eleven. *Id*. at 46. Opperman testified that

Deaconess recommended that Mother go to Echo Clinic for medication management but did not recall where she was supposed to go for counseling. However, Mother did not follow up or complete the mental health assessment. At the fact-finding hearing, Mother said she was taking medication while incarcerated but was unable to take her anti-depressants or anti-anxiety medication because she did not have a doctor or insurance. She also stated that she experiences auditory hallucinations almost on a daily basis. Ultimately, Opperman testified that "[n]o progress was made at all during this case in any way." *Id.* at 91. Similarly, because Mother did not demonstrate sobriety, missed drug screens, and lacked a stable home, supervised visitation with her Children never progressed to unsupervised visitation. *Id.* at 87-88.

[28]  Mother points to her progress since her release on April 15, 2018, in support of her argument that there is a reasonable probability the conditions could be remedied. She contends that, in the two months between her release and the conclusion of the fact-finding hearing, no services have been offered to her, she voluntarily contacted Opperman, obtained employment, and was seeking housing. Although we commend Mother on her recent efforts, we have held that when a parent demonstrates only temporary improvements, but the "pattern of conduct shows no overall progress, the [juvenile] court might reasonably find that under the circumstances, the problematic situation will not improve." *In re N.Q.*, 996 N.E.2d at 392. Thus, DCS only had to establish that a reasonable probability exists that Mother's behavior will not change. *Id.*

[29]     Here, the juvenile court found that despite intervention, "Mother has demonstrated an inability to remain sober, as well as a clear pattern of behavior in regard to her substance abuse. She has consistently ignored the orders of the Court and failed to benefit from the services provided [to] her in order to alleviate this concern." Appealed Order at 10. Thus, it concluded that Mother's "long history with substance abuse, leading up to her most recent criminal charges for drug-related offenses, provides the Court with the best predictor of her future behavior." *Id*. at 15.

[30]     Even if Mother has had periods of sobriety and has recently made efforts to better her life, the juvenile court was within its discretion to weigh Mother's pattern of conduct more heavily than any recent progress. *See E.M.*, 4 N.E.3d at 643 (noting we entrust to the juvenile court the delicate balance of weighing a parent's recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation). Mother's criminal history, prior DCS interventions, lack of compliance, and most recent arrest highlights a long-term pattern of substance abuse and mental health issues with little to no overall improvement. Thus, there is ample evidence in the record supporting the juvenile court's finding that there is a

reasonable probability that the conditions which led to the Children's removal will not be remedied.[5]

# B. Best Interests

[31] Mother also challenges the juvenile court's determination that termination of her parental rights is in the Children's best interests. In determining the best interests of a child, the juvenile court must look beyond the factors identified by DCS and consider the totality of the evidence. *In re A.S.*, 17 N.E.3d 994, 1005 (Ind. Ct. App. 2014), *trans. denied*. In doing so, the juvenile court must subordinate the interests of the parents to those of the child and it need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). Recommendations of the case manager and court-appointed advocate, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *A.S.*, 17 N.E.3d at 1005.

[32] Here, family case manager Opperman and CASA, Autumne Baker, both testified that termination of Mother's parental rights was in the best interests of

---

[5] Because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the juvenile court only had to find that DCS proved by clear and convincing evidence one of three elements of subsection (B). *Castro v. Ind. Office of Family & Children*, 842 N.E.2d 367, 373 (Ind. Ct. App. 2006), *trans. denied*. We hold that the evidence in the record supports the juvenile court's finding that Mother's substance abuse and mental health issues will not be remedied; therefore, we need not also address whether the evidence supports the juvenile court's finding that the continuation of the parental relationship poses a threat to the Children.

the Children. *See* Tr., Vol. I at 91, 118. Opperman explained that termination was in the Children's best interests "[b]ecause [the Children] are able to have a stable home and ensure that all of their needs are met and they have sober care givers who are there for them all the time physically and emotionally." *Id.* at 92. We conclude that Opperman and Baker's recommendations, coupled with evidence that Mother's substance abuse and mental health issues will not be remedied, are sufficient to support the juvenile court's determination that termination is in the Children's best interests.

# Conclusion

[33] For the foregoing reasons, we conclude that the juvenile court did not abuse its discretion by granting DCS' motion to reopen evidence after the fact-finding hearing concluded and the juvenile court's order terminating Mother's parental rights was not clearly erroneous.

[34] Affirmed.

Riley, J., and Kirsch, J., concur.