## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 20 2020, 9:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ana M. Quirk
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:

K.H. (Minor Child),

and

M.H. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

October 20, 2020

Court of Appeals Case No.
20A-JT-894

Appeal from the Delaware Circuit Court

The Honorable Kimberly Dowling, Judge

The Honorable Amanda Yonally, Magistrate

Trial Court Cause No.
18C02-1908-JT-191

**Altice, Judge.**

# Case Summary

[1] M.H. (Mother) appeals from the involuntary termination of her parental rights to her minor child, K.H. (Child), challenging the sufficiency of the evidence supporting the termination order. Mother also asserts that her due process rights were violated when the trial court did not conduct a hearing prior to ordering supervised visitation during the child in need of services (CHINS) proceedings.

[2] We affirm.

# Facts & Procedural

[3] Mother and D.J. (Father)[1] are the biological parents of Child, born in June 2016. Child was born with fetal alcohol syndrome and tested positive for marijuana at birth. On July 27, 2016, the Indiana Department of Child Services (DCS) filed a CHINS petition, alleging that child was neglected or endangered due to Mother's drug use.[2] The petition also alleged that Mother submitted to a drug screen on or around June 29, 2016, was positive for marijuana, and, after agreeing to an informal adjustment, Mother failed to maintain contact with

---

[1] Father passed away during the proceedings and before the termination petition was filed. We primarily focus on the facts related to Mother.

[2] Ind. Code § 31-34-1-10 provides that a child born with a controlled substance in his or her body is a CHINS.

DCS. FCM Mischa Davis was assigned to the case in August 2016 and remained continuously on it through the proceedings.

[4] On August 2, 2016, Mother was arrested for misdemeanor battery resulting in bodily injury. On August 19, Mother admitted that Child was a CHINS, and on October 14, 2016, the court adjudicated Child a CHINS. That same date, the court issued a dispositional decree ordering that placement would remain with Mother, and it ordered Mother to, among other things, maintain suitable, safe housing; complete a substance abuse assessment and follow all recommendations; not consume illegal substances; submit to random drug/alcohol screens upon request; and provide Child with a safe, secure, and nurturing environment free from abuse and neglect. In addition, the order required Mother to permit DCS to enter her home upon request and make Child available with or without an appointment. As of November 2016, Mother had partially complied with the case plan.

[5] In December 2016, Child was removed from Mother's home because Child was endangered while in Mother's care due to an incident of domestic violence between Mother and Father. Initially, Child was placed in relative care with a maternal aunt but Mother expressed concern about the aunt's care for Child and requested Child be placed in foster care. About two weeks later, on December 28, the court ordered an emergency change of placement, and Child was placed in licensed foster care, where Child has remained throughout the proceedings.

[6] At a June 2017 permanency hearing, the court found that Mother had partially enhanced her ability to fulfill her parental obligations, and the court authorized unsupervised visitation including a trial home visit. In July 2017, while Child was exercising overnight visitation in Mother's home, Mother engaged in an altercation with someone in the home and was thereafter charged with Level 3 felony aggravated battery. Mother was out on bond when she committed that offense.

[7] On August 28, 2017, Mother was convicted of the August 2016 misdemeanor battery resulting in bodily injury charge. She was incarcerated in Delaware County Jail from July 2017 to November 2017. When she was released, she requested that visits with Child resume, and in November 2017, Mother began exercising supervised visitation.

[8] At the December 18, 2017 permanency hearing, the court found that Mother had been incarcerated during a significant portion of the reporting period; she had not maintained stable housing or a legal source of income; and she was not compliant with screens before her incarceration and had tested positive for cocaine. She had recent criminal charges that included an allegation of aggravated battery, battery resulting in serious bodily injury, possession of cocaine, and criminal recklessness. The court changed Child's permanency plan to adoption with a concurrent plan of reunification.

[9] At a March 2018 review hearing, the court found that Mother was partially compliant with Child's case plan. She had taken steps to address anger

management through the Delaware County Probation Department and had submitted to drug screens but had tested positive for THC and had ongoing criminal matters. In June 2018, the court continued the concurrent permanency plan of adoption and reunification. By September 2018, the court authorized overnight and weekend visits with Mother.

[10] In December 2018, DCS petitioned for a trial home visit but after a December 17, 2018 review hearing, the court denied the request. The court found that Mother was partially compliant with Child's case plan, as she was employed, had stable housing, was cooperative with DCS, and had begun individual therapy. However, the court concluded that it was not in Child's best interests to participate in a trial home visit based on, among other things, the following: Mother was allowing maternal aunt to provide child care although the court previously had ordered that the maternal aunt have no visitation with Child; Mother was driving Child to and from locations without a license and after the court had admonished her against doing so, noting "the fact that Mother continues to violate the law and demonstrate poor judgment in transporting the child on a regular basis is of serious concern to the Court"; she had failed to appear in city court on five occasions related to her driver's license; Mother had "serious" pending criminal charges for Level 3 felony aggravated battery, Level 5 felony battery resulting in serious bodily injury, and Level 6 felony possession of cocaine; she tested positive for THC in September 2018 and "failed to show up" for requested drug screens on November 6, 9, and 12, 2018; and Mother "has difficulty adhering to a consistent visitation schedule, often asking to

change the schedule or showing up late" and was inconsistent in picking up and dropping off Child from daycare or foster placement. *Exhibits Vol.* at 53-54.

[11]  In March 2019, DCS was going to recommend a trial home visit but on March 7, 2019, DCS received a report that Child smelled like marijuana when Mother brought him to daycare. FCM Davis went to Mother's home to investigate, but Mother did not answer the door. FCM Davis returned the next day, and Mother again did not answer the door. FCM Davis, while still on the front porch, called Mother, who said that she was inside with Child but would not allow FCM Davis to come inside. FCM Davis then requested that the court return visitation to supervised, and the court granted the request without a hearing. Thereafter Mother's screens were clean for some weeks, but then she missed over twenty screens in April and June. She tested positive for marijuana on May 9 and 16, 2019.

[12]  In June 2019, the court held a hearing on permanency and visitation. The court found that Mother was "minimally compliant" with the case plan, as she had maintained housing, was employed and had completed an intake on a referral for individual therapy, but was not compliant in providing drug screens and had tested positive for marijuana several times. The court addressed Mother's pending criminal charges and observed that, during the reporting period, Mother had appeared in a Facebook live video where "she was looking for a woman that she intended to assault" and "repeatedly threatened to beat the woman" using vulgar and violent language. *Id.* at 58. The court expressed that "Mother continues to demonstrate a pattern of violent behavior" and "has

consistently demonstrated a negative attitude toward DCS . . . and service providers." *Id.* at 58-59. The court denied DCS's motion to resume unsupervised visits and ordered a permanency plan of adoption.

[13] On August 16, 2019, Mother tested positive for cocaine. On August 23, 2019, DCS filed a petition to terminate Mother's parental rights. Meanwhile, in July 2019, Mother entered into a plea agreement involving five pending criminal cases. On October 31, 2019, the criminal court accepted the plea agreement in which she pled guilty to Level 3 felony aggravated battery and Level 6 felony possession of cocaine[3], and other charges were dismissed. The court sentenced her to ten years with five years executed and five suspended to supervised probation. Mother was incarcerated in the Delaware County Jail from September 2019 until November 2019, when she was transferred to the Indiana Women's Prison.

[14] At the December 19, 2019 fact-finding hearing, FCM Davis testified that Mother had participated in various services for substance abuse and domestic violence but did not fully engage. She described that Mother's progress was inconsistent, and she continued to face criminal charges, including at least three battery charges. FCM Davis testified that when she tried to meet with Mother to discuss the allegation of Child smelling like marijuana at daycare, Mother refused. FCM Davis stated that the permanency plan was for the foster parents

---

[3] Mother possessed the cocaine while in jail.

to adopt Child. The CASA, who had been assigned to the case for two years and who had seen Child in his foster placement about once a month, recommended that the court grant DCS's petition to terminate Mother's parental rights. The foster father testified that he and his wife desired to adopt Child.

[15] Mother testified that she used marijuana and alcohol up until her September 2019 incarceration. She stated that her expected release date is December 6, 2021 but that it could be sooner if she completed a substance abuse program.

[16] On March 27, 2020, the trial court entered an order that included, in part, the following findings and conclusions:

> 54. Despite the intervention of the Department of Child Services and the Court, Mother has demonstrated an inability or unwillingness to remain sober, and she has exhibited a clear pattern of violent behavior and numerous arrests on violent criminal charges. Mother has failed to benefit from the services provided in order to alleviate the conditions that resulted in the child's removal from the home and continued placement outside of the home. Mother's criminal history, particularly with regard to the aggravated battery that occurred while the child was on a visitation with Mother and her repeated involvement in fighting with others and domestic violence, demonstrates Mother's instability. Mother has proven herself unwilling or unable to meet her parental responsibilities.

> 55. That based on the foregoing, there is a reasonable probability that the conditions that resulted in the child's removal and/or continued placement outside the home will not be remedied.

* * *

57. Based on Mother's habitual pattern of violent and antisocial conduct that resulted in her incarceration, there is a substantial probability of future neglect if the petition for termination of parental rights is not granted. There is a reasonable probability that the continuation of the parent/child relationship herein poses a threat to the well-being of the child.

*Appellant's Appendix Vol. 2* at 67. The court also determined that termination was in Child's best interests and that there existed a satisfactory plan for Child, which included adoption by the foster parents. The court terminated Mother's rights. Mother now appeals. Additional information will be provided below as needed.

## Discussion & Decision

## I. Sufficiency of Evidence

[17] When reviewing the termination of parental rights, we consider the evidence in the light most favorable to the prevailing party, and we will not reweigh the evidence or judge the credibility of the witnesses. *Matter of M.I.*, 127 N.E.3d 1168, 1170 (Ind. 2019). To prevail, the challenging party must show that the court's decision is contrary to law, meaning that the probative evidence and reasonable inferences point unerringly to the opposite conclusion. *Id*. "Because a case that seems close on a 'dry record' may have been much more clear-cut in person, we must be careful not to substitute our judgment for the trial court

when reviewing the sufficiency of the evidence." *In re E.M.*, 4 N.E.3d 636, 640 (Ind. 2014).

[18] It is well recognized that a parent's interest in the care, custody, and control of his or her children is perhaps the oldest of the fundamental liberty interests. *In re R.S.*, 56 N.E.3d 625, 628 (Ind. 2016). Although parental rights are of constitutional dimension, the law provides for the termination of these rights when parents are unable or unwilling to meet their parental responsibilities. *In re R.H.*, 892 N.E.2d 144, 149 (Ind. Ct. App. 2008). In addition, a court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding the termination. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *Id.*

[19] Before an involuntary termination of parental rights may occur in Indiana, DCS is required to allege and prove by clear and convincing evidence, among other things:

> (B) that one (1) of the following is true:
>
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been
> adjudicated a child in need of services[.]

Ind. Code § 31-35-2-4(b)(2)(B); Ind. Code § 31-37-14-2. DCS must also prove by clear and convincing evidence that termination is in the best interests of the child and that there is a satisfactory plan for the care and treatment of the child. I.C. § 31-35-2-4(b)(2)(C), (D); I.C. § 31-37-14-2.

[20] On appeal, Mother contends that DCS failed to present clear and convincing evidence that the conditions resulting in Child's removal or the reasons for placement outside the home would not be remedied, that continuation of the parent-child relationship posed a threat to Child's well-being, and that termination is in Child's best interests. We will address each of these in turn, as needed.

### *Conditions Not Remedied*

[21] In deciding whether a reasonable probability exists that conditions will not be remedied, the trial court must judge a parent's fitness to care for her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied.* The court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the child. *Id.* "A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable

probability that the conditions will change." *In re L.S.*, 717 N.E.2d 204, 210 (Ind. Ct. App. 1999), *trans. denied, cert. denied* (2002). The statute does not simply focus on the initial basis for a child's removal for purposes of determining whether a parent's rights should be terminated, but also those bases resulting in the continued placement outside the home. *In re N.Q.*, 996 N.E.2d 385, 392 (Ind. Ct. App. 2013). DCS need not provide evidence ruling out all possibilities of change; rather, it need establish only that there is a reasonable probability the parent's behavior will not change. *In re Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

[22] Mother argues that Child was removed from her home due to domestic violence issues with Father, and, given that he passed away during the proceedings and she completed recommended programs, there were no longer any domestic violence issues. Therefore, she argues, the conditions that led to Child's removal had been remedied and the court's conclusion to the contrary was erroneous. We reject this argument.

[23] First, although domestic violence with Father was no longer an issue, Mother continued to engage in violent behavior as evidenced by her arrests and convictions for battery. Second, our inquiry focuses not only on the conditions that caused removal, but also on the reasons for Child's continued placement outside the home. *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*.

Here, the CHINS petition alleged that Child had been neglected due to Mother's drug use. While Child's removal may have occurred because of domestic violence that occurred with Father in the home, Child's placement outside the home continued because of Mother's criminal – sometimes violent – conduct, resulting in incarcerations, failure to submit to drug screens as required, and continued use of alcohol and marijuana until her September 2019 incarceration. While Mother made some progress in the three years since Child's removal, we have held that "[w]here there are only temporary improvements and the pattern of conduct shows no overall progress, the court might reasonably find that under the circumstances, the problematic situation will not improve." *In re A.H.*, 832 N.E.2d 563, 570 (Ind. Ct. App. 2005).

We find that the trial court's determination that there is a reasonable probability that the conditions that resulted in Child's removal or the reasons for placement outside Mother's home will not be remedied is supported by clear and convincing evidence. Because I.C. § 31-35-2-4(b)(2)(B) is written in the disjunctive, we need not review the trial court's determination that continuation of the parent-child relationship posed a threat to Child's well-being.

### Best Interests

Mother asserts that the evidence was insufficient to support the trial court's determination that termination was in Child's best interests. In making this best-interests determination, the trial court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re J.C.*, 994 N.E.2d 278, 290 (Ind. Ct. App. 2013). The court must subordinate the

interest of the parent to those of the children and need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). Our Supreme Court has explained that "[p]ermanency is a central consideration in determining the best interests of a child." *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009). "Moreover, we have previously held that the recommendations of the case manager and court-appointed advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests." *In re. J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[27] Mother argues that "[t]here was no evidence that she did not care for [Child], that they were not bonded, or that they did not have a good relationship." *Appellant's Brief* at 14. Considering the totality of the evidence before the court, however, we find no error in the court's conclusion that termination was in Child's best interest. Although Mother participated in some services, she did not fully engage or complete all required by the court. She did not comply with many drug screens, and she conceded that she continued to use marijuana and alcohol until her incarceration in September 2019. During the proceedings, she engaged in criminal behavior, some violent, that led to arrests and incarceration. When not incarcerated, she drove Child without having a license after being admonished not to do so and allowed childcare with a relative who was not to have visitation with Child per court order. The CASA

recommended termination of Mother's parental rights. Sufficient evidence supports the court's determination that termination of Mother's parental rights is in Child's best interests.

## II.  Due Process

[28]  Mother argues on appeal that her due process rights were violated when the court, without first holding a hearing, modified visitation in March 2019 to supervised.[4]  We reject her claim for several reasons.

[29]  As an initial matter, we note that the court's order was issued, not just after receipt of the report about smelling like marijuana – which Mother claims was vague in terms of date and time, and not true, and which she did not have a chance to challenge before the change was made – but after Mother denied DCS access to her home and to Child and refused to take a drug screen, all of which were required by the dispositional order.  Furthermore, the record does not reveal that Mother made any objection in the CHINS proceedings or took any action to revisit the court's decision, and thus she has not preserved her claimed error for review. *N.C. v. Indiana Dep't of Child Servs.*, 56 N.E.3d 65, 69 (Ind. Ct. App. 2016) (party may not raise issue for first time on appeal), *trans. denied.*  Mother also does not cite to any authority in support of her proposition

---

[4] DCS's motion is not in the record before us.

that a hearing was required in this situation. Accordingly, the claim is waived. Ind. Appellate Rule 46(A)(8).

[30] Affirmed.

Riley, J. and May, J., concur.